METROPOLITAN LIFE INSURANCE COMPANY v REIST

Docket No. 93320. Submitted October 14, 1987, at Lansing. Decided March 8, 1988. Leave to appeal applied for.

Eric L. Reist died from injuries suffered in a fall from an eighth floor balcony of a Florida hotel while on vacation with his wife. His wife, Linda Reist, was the designated beneficiary on three life insurance policies on her husband. Eric Reist had three daughters from an earlier marriage who alleged that Linda Reist and her boyfriend conspired to and did in fact kill Eric Reist. Police investigations into the matter failed to find sufficient evidence to pursue a criminal prosecution. On September 25, 1985, Metropolitan Life Insurance Company filed a complaint for interpleader in Ingham Circuit Court alleging that a controversy existed between Linda Reist and her daughter, Erin Reist; the decedent's three daughters by his previous marriage; his former spouse; and the personal representative of his estate, First America Bank of Lansing, as to proceeds of certain life insurance policies and that plaintiff was unable to ascertain which party was entitled to the funds. Eric Reist's three daughters from his previous marriage filed a cross-claim against Linda Reist alleging that Linda Reist feloniously and intentionally killed Eric Reist and therefore any interest Linda Reist may have had in the insurance proceeds had been severed. Linda Reist moved for summary disposition as to the cross-claim on the ground that cross-plaintiffs had failed to state a cause of action upon which relief could be granted and that there was no genuine issue of material fact and therefore she was entitled to judgment as a matter of law. The court, Robert Holmes Bell, J., agreed and granted the motion for summary disposition, finding that there was no genuine issue of fact upon which a jury could conclude that Eric Reist's death was not accidental. Two of the three cross-plaintiffs appealed.

The Court of Appeals *held:*

The evidence presented in this case is sufficient to raise a

REFERENCES

Am Jur 2d, Summary Judgmemt § 36.

For related annotations, see the Index to Annotations under Summmary Judgment

factual dispute as to the issues of motive, opportunity, and Linda Reist's credibility. Thus, genuine issues of material fact have been demonstrated by the cross-plaintiffs rendering summary dismissal of the action erroneous. The order granting summary disposition is reversed and the case is remanded for trial on the merits.

Reversed and remanded.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUE OF MATERIAL FACT — AFFIDAVITS — CREDIBILITY OF AFFIANT — COURT RULES.

A motion for summary disposition on the ground that there is no genuine issue as to any material fact cannot be granted where the truth of a material factual assertion in an affidavit by the moving party depends on the affiant's credibility; under these circumstances a genuine issue of material fact exists which must be decided at a trial by the trier of fact (MCR 2.116[C][10]).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — MOTIVE — INTENT — CREDIBILITY OF WITNESSES — COURT RULES.

The appropriateness of granting summary disposition is especially suspect where motive and intent are at issue or where the credibility of a witness or deponent is crucial (MCR 2.116[C][10]).

*Church, Kritselis, Wyble & Robinson, P.C.* (by *F. Merrill Wyble* and *Brian W. Bevez*), for Linda K. Reist.

*Allen, Friedman & O'Toole* (by *Raymond L. Feul*), and *Gromek, Bendure & Thomas* (by *Daniel J. Wright* and *Neal C. Villhauer*), of Counsel, for Shawn and Renee Reist.

Before: BEASLEY, P.J., and MACKENZIE and R. P. HATHAWAY,* JJ.

PER CURIAM. Defendants/cross-plaintiffs Shawn and Renee Reist, daughters of decedent from a prior marriage, appeal as of right from a grant of summary disposition entered in favor of defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant/cross-defendant Linda Reist, wife of decedent, on May 27, 1986, by Ingham Circuit Judge Robert Holmes Bell.

The trial judge ruled that, under MCR 2.116(C)(10), Shawn and Renee had failed to demonstrate any facts of an intentional killing by Linda Reist, which would have entitled them to life insurance proceeds from the death of Eric Reist pursuant to MCL 700.251(3); MSA 27.5251(3). We reverse.

This matter arises out of a dispute over the entitlement to various life insurance proceeds totaling $438,550. Linda Reist, wife of the deceased, was the designated beneficiary on three policies.

In early December, 1984, decedent suspected that his wife was having an affair with Tim Reid, the seventeen-year-old son of neighbors Jayanne and Pat Reid. Decedent installed a recording device on his home telephone to record incoming and outgoing telephone conversations. The recording device was installed without the knowledge or consent of Tim Reid or Linda Reist. Later, decedent's suspicions were confirmed by listening to tapes of recorded conversations between his wife and Tim Reid. Tim Reid subsequently admitted to Sarasota, Florida, police detectives that he engaged in sexual relations with Linda Reist.

Between approximately December 8, 1984, and December 11, 1984, decedent appeared extremely distraught and troubled to three of his business associates. Decedent stated that he "feared for his life." Eric Reist had listened to tape recordings of telephone conversations between his wife and Tim Reid where, according to decedent, the two had discussed "getting rid of him (Eric Reist)" over the Christmas holidays.

In mid-December, 1984, decedent approached

Pat and Jayanne Reid concerning taped evidence of their son's involvement with his wife. Later, Pat Reid approached Linda Reist and advised her that the affair could affect her financially and socially. Jayanne Reid acknowledged that she listened to tapes, but denied having heard any purported homicide plot, although she told police that decedent told her that he was afraid his wife was planning to kill him.

On December 26, 1984, the decedent and his wife boarded a plane to vacation in Sarasota, Florida. That day, they checked into room 805 in the Sarasota Hyatt Hotel. At approximately 11:10 P.M., guests on the eighth floor overheard a loud argument between a man and a woman coming from room 805. The argument concerned the woman having called another man the prior Tuesday. Within minutes after the argument, the front desk received phone calls from rooms 905, 705 and 605 that a man (decedent) had fallen from the eighth floor balcony. Almost ten minutes after the initial report, Linda Reist reported the incident to the hotel. The Sarasota police were summoned, the body and scene were photographed, and a statement was taken from Linda Reist.

The following morning, December 27, 1984, an autopsy was performed on decedent Eric Reist's body. The cause of death was listed as multiple internal injuries and fractures due to a fall. The manner of death was listed as "undetermined." The autopsy report revealed a large abrasion posterior to decedent's left thigh.

Also that morning, Linda Reist left Sarasota for Michigan, leaving decedent's body in the care of his two daughters. Later that day, the Sarasota Police Department received calls from the decedent's co-workers and relatives advising that they suspected decedent was the victim of a homicide.

The Sarasota police began investigating decedent's death as a possible homicide.

Lansing police secured decedent's business office at General Motors Corporation and seized several tapes of recorded telephone conversations, cash and other property. Linda Reist attempted to gain access to the office on the morning of December 28, 1984, but was denied entry. Lansing police later obtained a search warrant for the marital home, but found no other tapes. However, a safe in the garage was found to have already been opened by a locksmith hired by Linda Reist.

The investigation conducted by the Lansing Police Department determined that the tapes did not contain incriminating statements and that no homicide conspiracy existed. On January 6, 1985, the case was closed. However, the investigation revealed that Linda Reist repeatedly told Tim Reid that she wished her husband would die.

On October 30, the Sarasota Police Department completed its investigation and submitted its results to the Florida State Attorney's office. The State Attorney's office determined that there was insufficient evidence to pursue a criminal prosecution or to suggest the identity of the responsible party.

On September 25, 1985, plaintiff, Metropolitan Life Insurance Company, filed a complaint for interpleader in the Ingham Circuit Court. Plaintiff alleged that there existed a controversy between competing claimants as to proceeds of certain policies and that plaintiff was unable to ascertain which party was entitled to these funds. Named as defendants were Linda Reist; Linda's minor daughter by decedent, Erin Reist; the decedent's three daughters by his previous marriage, Ericka Meyers, Shawn Reist, and J. Renee Reist; decedent's former spouse, Judith Operlander; and the per-

sonal representative of the estate, First of America Bank of Lansing. Answers to the complaint were filed. Additionally, a cross-claim was filed by defendants/cross-plaintiffs against Linda Reist which alleged that, based upon information and belief, Linda Reist feloniously and intentionally killed the decedent and, thus, pursuant to MCL 700.251; MSA 27.5251 any interest Linda Reist may have in the insurance proceeds has been severed.

On February 4, 1986, Linda Reist filed a motion for summary disposition as to the cross-claim pursuant to MCR 2.116(C)(8) and (10). Linda Reist alleged that defendants/cross-plaintiffs had failed to state a claim upon which relief could be granted and that there existed no genuine issue of material fact, and therefore she was entitled to judgment as a matter of law.

On May 6, 1986, oral argument was presented to Ingham Circuit Judge Robert Holmes Bell. Judge Bell granted Linda Reist's motion for summary disposition under MCR 2.116(C)(10), finding that there was no genuine issue of fact upon which a jury could conclude that decedent's death was not accidental.

On June 17, 1986, Shawn and Renee Reist filed the present claim of appeal alleging that the trial court committed error in granting summary disposition in favor of Linda Reist.

The ultimate fact at issue was whether decedent's death resulted from an intentional killing. At the hearing on the motion for summary disposition, the respective parties supported their arguments with affidavits. It follows that the ultimate issue of material fact turns upon the credibility of the affiants and, particularly, the credibility of Linda Reist herself. In addition, documentary evidence demonstrated decedent's fear for his safety and Linda Reist's motive, opportunity, and lack of

credibility. We believe this was sufficient to show a genuine issue of material fact.

The threshold requirements of a claim premised on the relevant probate code section are that (1) the policyholder was killed, (2) the beneficiary committed the killing, and (3) the killing was felonious and intentional.

A motion for summary disposition brought under MCR 2.116(C)(10), based on the lack of a genuine issue of material fact, tests whether there is factual support for the claim. In ruling on the motion, the trial court must consider the affidavits, pleadings, depositions, admissions and other documentary evidence submitted by the parties. MCR 2.116(G)(5). The opposing party must show that a genuine issue of fact exists. Giving the benefit of all reasonable doubt to the opposing party, the trial court must determine whether the kind of record that might be developed would leave open an issue upon which reasonable minds could differ. *Weeks v Bd of Trustees, City of Detroit General Retirement System,* 160 Mich App 81, 84; 408 NW2d 109 (1987). A reviewing court should be liberal in finding that a genuine issue of material fact exists. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). A court must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome. *Rizzo, supra* at 371.

The party opposing a motion for summary disposition has the burden of showing that a genuine issue of disputed fact exists. *Fulton v Pontiac General Hospital,* 160 Mich App 728, 735; 408 NW2d 536 (1987). The opposing party may not rest upon mere allegations or denials in the pleadings but must, by affidavit or other documentary evidence, set forth specific facts showing that there is a genuine issue for trial. MCR 2.116(G)(4). Should

the opposing party fail to make such a showing, summary disposition is appropriate. *Fulton, supra* at 375-376; *Rizzo, supra* at 372.

In the present case, defendants/cross-plaintiffs alleged that Linda Reist feloniously and intentionally killed decedent and therefore was not entitled to the insurance proceeds, pursuant to MCL 700.251; MSA 27.5251. At the time of Eric Reist's death this section of the Revised Probate Code provided in relevant part:

> (3) A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills or aids and abets the killing of the principal obligee or the individual upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement, and it becomes payable as though the beneficiary predeceased the decedent.

The statute further provided:

> (5) A final judgment of conviction of felonious and intentional killing or aiding and abetting therein is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing or aiding and abetting the killing, the court may determine by a preponderance of evidence whether the killing or aiding and abetting the killing was felonious and intentional for purposes of this section.

At trial, it would be incumbent upon defendants/cross-plaintiffs to establish by a preponderance of the evidence that (1) the policyholder was killed, (2) the beneficiary committed the killing or aided and abetted in it, and (3) the killing was felonious and intentional. On a motion for summary disposition, however, defendants/cross-plain-

tiffs were merely required, through affidavits or other documentary evidence, to demonstrate some facts showing that there was a genuine issue for trial.

The Lansing and Sarasota police records provided evidence which, although insufficient to support a prosecution proving Linda Reist guilty beyond a reasonable doubt, demonstrated a genuine issue of fact for trial.

Investigating Officer Whitehead of the Sarasota Police Department observed that the physical evidence weighed against an inference that decedent had jumped forward from the balcony:

> Writer, Tech. Casey, and Sgt. Quarmby then responded to room 705 to photograph teh [sic] bent rail on that balcony. Located on the rail was a lone hair and what appeared to be skin. On the edge of the slab beneath the rail was a loage [sic] amount of hair and skin which writer believes came from the abraision [sic] which was previously described and photographed on the posterior of the left thigh. This is significant because it indicates the decedent brushed past with his back to the balcony. This would preclude him jumping or falling forward from the balcony.

The hotel desk operator informed police that Linda Reist did not call for assistance until ten minutes after the incident was first reported. Linda Reist gave conflicting statements to the police concerning her husband's death. At the scene, she reported that decedent was known to jump from balcony to balcony and that he apparently slipped and fell. She added that the couple had sex shortly before this happened. Later, Linda Reist admitted that she and decedent had engaged in an argument that prompted her to walk into another area of the hotel room such that decedent was out of her view. On April 13, 1985, Linda Reist again met with Sarasota Police Department

investigators. This time she stated that decedent had threatened suicide and the couple had a physical struggle in which she chipped her tooth. The investigating officer noted that during this interview "she did change the story substantially."

Linda Reist's report of her husband's balcony-jumping habits is contradicted by the affidavit of a close friend, Verlin Franks, who stated that decedent was terrified of heights. Also, several inconsistencies resulted from police interviews with Tim Reid. Linda Reist's motion for summary disposition was supported solely by the strength of her own affidavit. Defendants/cross-plaintiffs submitted several affidavits of friends and relatives which contradicted material portions of the sworn testimony of Linda Reist.

It is well settled that where the truth of a material factual assertion of a moving party's affidavit depends on the affiant's credibility, there exists a genuine issue to be decided at a trial by the trier of fact and a motion for summary judgment cannot be granted. *Brown v Pointer,* 390 Mich 346, 354; 212 NW2d 201 (1973); *Crossley v Allstate Ins Co,* 139 Mich App 464, 468; 362 NW2d 760 (1984). Moreover, summary judgment is especially suspect where motive and intent are at issue, or where the credibility of a witness or deponent is crucial. *Crossley, supra.* In the instant case, the evidence is sufficient to raise a factual dispute as to the issues of motive, opportunity and Linda Reist's credibility.

Thus, genuine issues of material fact have been demonstrated by defendants/cross-plaintiffs such that summary dismissal of the action was erroneous. Accordingly, we reverse the trial court's May 27, 1986, order granting summary disposition in favor of defendant/cross-defendant Linda Reist and remand this case for trial on the merits.

Reversed and remanded.