HARTMANN v SHEARSON LEHMAN HUTTON, INC

Docket No. 121313. Submitted October 8, 1991, at Detroit. Decided January 9, 1992; approved for publication April 22, 1992, at 9:10 A.M.

Lila B. Hartmann, as personal representative of the estate of Joseph E. Walker, deceased, brought an action in the Oakland Circuit Court against Shearson Lehman Hutton, Inc., and Shearson stockbroker William J. Konchal, alleging negligent estate planning, sale of securities unsuited to the decedent's investment objectives while he was alive, excessive trading or "churning" in the decedent's account, and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC 1961 *et seq.* The court, Robert L. Templin, J., granted summary disposition for the defendants and dismissed the action. The plaintiff appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in denying the plaintiff's discovery request for a policy and procedure manual for Shearson employees. The plaintiff failed to demonstrate the relevance of the manual to the activities undertaken by Konchal with respect to the decedent's account and whether those activities constituted negligence or violations of the statutes upon which the action was based.

2. In dismissing the claim of negligent estate planning, the trial court did not err in ruling that Konchal had not advised the decedent with regard to estate planning.

3. The trial court did not err in dismissing the claim that unsuitable investments were recommended to the decedent. That claim was based in part on MCL 451.604(a)(1)(M); MSA 19.776(204)(a)(1)(M), which authorizes the revocation of a bro-

REFERENCES

Am Jur 2d, Brokers §§ 19 *et seq.*, 140.5; Securities Regulation—Federal §§ 350 *et seq.*, 401 *et seq.*, 493, 537 *et seq.*; Securities Regulation—State §§ 20 *et seq.*

Stockbroker's liability for allegedly "churning" or engaging customer's account in excessive activity. 32 ALR3d 635.

Private federal right of action against brokerage firm for violation of exchange or dealer association rule. 54 ALRFed 11.

ker's registration for recommending investment options not suited to a client. Section 204(h), however, provides that a violation of a provision of § 204 does not subject a registrant to civil liability to a client unless the violation is also contrary to some other provision of the Uniform Securities Act, MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.* In this case, the plaintiff did not allege a violation of another provision of the act and therefore could not maintain a claim under § 204.

4. A broker's violations of rules promulgated by the New York Stock Exchange and the National Association of Securities Dealers do not provide a client with a private cause of action against the broker. To the extent that the claim that unsuitable investments were recommended was based on alleged violations of NYSE and NASD rules, the trial court did not err in dismissing the claim.

5. Federal courts have exclusive jurisdiction of claims arising under the Securities and Exchange Act, 15 USC 78a *et seq.* The trial court did not err in dismissing the claim that unsuitable investments were recommended or sold to the decedent in violation of the act.

6. The trial court did not err in dismissing the claim that Konchal was negligent in recommending investments. Assuming that a common-law negligence action can arise from a broker's recommendation that a client engage in a securities transaction not suited to the client, the plaintiff nevertheless failed to produce evidence to support a claim that Konchal had made such recommendations.

7. The trial court did not err in dismissing the claim of excessive trading in the decedent's account. To establish such a claim, the plaintiff needed to show, but did not, that Konchal had control of the decedent's account.

8. The trial court properly dismissed the claim under the Racketeer Influenced and Corrupt Organizations Act. The record was devoid of any evidence showing that the defendants engaged in securities fraud or otherwise committed acts that could give rise to a claim under the act.

Affirmed.

1. SECURITIES REGULATION — REGISTRATION OF BROKERS OR DEALERS — REVOCATION — UNIFORM SECURITIES ACT.

The registration of a securities broker pursuant to the Uniform Securities Act may be revoked for recommending the purchase, sale, or exchange of a security where the recommendation is not supported by reasonable grounds to believe that the recommendation is suited to the client on the basis of the client's

circumstances as known by the broker; such recommendation by a broker does not subject the broker to civil liability to the client unless it constitutes a violation of some other provision of the act (MCL 451.604[a][1][M],[h]; MSA 19.776[204][a][1] [M],[h]).

2. SECURITIES REGULATION — BROKERS — VIOLATIONS OF EXCHANGE AND DEALERS' ASSOCIATION RULES.

A securities broker's violations of rules promulgated by the New York Stock Exchange and the National Association of Securities Dealers do not provide a client a private cause of action against the broker.

3. SECURITIES REGULATION — SECURITIES AND EXCHANGE ACT — FEDERAL COURTS.

Federal courts have exclusive jurisdiction of claims arising under the Securities and Exchange Act (15 USC 78aa).

4. SECURITIES REGULATION — BROKERS — EXCESSIVE TRADING IN CLIENTS' ACCOUNTS.

A claim of excessive trading by a securities broker in a client's account cannot be established unless it is shown that the broker had control of the account.

*Neithercut, Klapp, Shegos, Dillard & Banas* (by *Kittredge R. Klapp*), for the plaintiff.

*Hertz, Schram & Saretsky, P.C.* (by *Bradley J. Schram* and *Gary M. Saretsky*), for the defendants.

Before: MACKENZIE, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM. Plaintiff appeals from an order of the circuit court granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(8) and (10). We affirm.

This dispute is premised on plaintiff's dissatisfaction with financial services rendered her now deceased father, Joseph Walker, by defendant Shearson Lehman Hutton, Inc., and its agent, defendant William J. Konchal. Plaintiff alleged various counts, including claims of negligent estate plan-

ning, that the decedent was sold securities unsuitable for his investment purposes, that defendants engaged in excessive trading in the decedent's account, and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC 1961 *et seq.*

Plaintiff first argues that the trial court erred in refusing to enforce her discovery request for a policy and procedures manual utilized by Shearson for its employees. Generally, any document that is relevant and not privileged is freely discoverable upon request. *Eyde v Eyde,* 172 Mich App 49, 55; 431 NW2d 459 (1988). The circuit court's decision to grant or deny a discovery request is reviewed for an abuse of discretion. *Id.* at 54.

In the case at bar, defendants do not allege that the document sought to be discovered is protected by privilege, and, therefore, we must determine whether the document was relevant to the litigation. Plaintiff, however, offers no explanation of the perceived relevancy of Shearson's policy and procedures manual beyond the bold assertion that the document is indispensable to preparation of her case in light of the fact that the major witness to the events, Walker, is now deceased. Plaintiff claims that the document would shed light on the customary scope of defendant's investment advice and trade practices and whether it is customary for an investment advisor to consider the capital gains tax consequences of investment recommendations.

We fail to see, however, how the manual would be relevant to any of these purposes. As for Walker being deceased, the policy and procedures manual would not bear out, or be relevant to, the actual facts of the transactions between Walker and defendants. As for the customary scope of defendant's investment advice and trade practice,

the relevant inquiry is not what Shearson directs its employees to do, but what this employee did in handling Walker's account and whether those activities constituted either a violation of the various statutes relied upon by plaintiff or negligence in the handling of Walker's account. As noted above, the manual will shed no light on what Konchal actually did, or did not do, in the handling of this account.

As for plaintiff's claim that discovery would aid in determining whether it is customary for an investment advisor to consider the capital gains tax consequences of his recommendations, this again is not relevant to the litigation. It matters not whether it is customary for Shearson's agents, because of the requirements of its policy and procedures manual, to advise investors regarding the capital gains tax consequences of investment advice. What is relevant is whether a stockbroker has an obligation to advise an investor regarding the tax consequences of recommended investment options and, if such a duty does exist, whether Konchal complied with that duty in handling Walker's account. Because plaintiff makes no showing of how the manual would shed light on either the question of a stockbroker's duty to his customer or what Konchal actually did in the handling of Walker's account, the contents of the manual are not relevant to this litigation and plaintiff is merely engaging in a fishing expedition.

While Michigan does encourage wide discovery, *Eyde, supra,* the trial court must also protect the interests of the opposing party so as not to be subjected to excessive, abusive, or irrelevant discovery requests. In the case at bar, if the manual does have some relevance to this litigation, plaintiff has not demonstrated to our satisfaction what that relevance is, and, therefore, we cannot con-

clude that the trial court abused its discretion in refusing to compel discovery of the document.

Plaintiff also argues on appeal that the trial court erred in granting defendants' motion for summary disposition. We disagree. First, we conclude that the trial court correctly determined that there was no genuine issue of material fact concerning count I of the complaint, plaintiff's claim of negligent estate planning. The trial court determined, after reviewing the deposition testimony and affidavit of Konchal, that there was no evidence to support the claim that Konchal ever gave estate planning advice to Walker and that plaintiff failed to produce any affidavits or other documentary evidence in support of her claim. A genuine issue of material fact does not exist in the absence of contradictory evidence brought forth by the nonmoving party. The nonmoving party may not merely rely on the allegations or denials contained in the pleadings. *McCart v J Walter Thompson USA, Inc,* 437 Mich 109, 115; 469 NW2d 284 (1991).[1]

Turning to count II of the complaint, that defendant Konchal had recommended an unsuitable

---

[1] Plaintiff's claim in her brief that defendant Konchal admitted in his affidavit that he had engaged in estate planning misrepresents Konchal's statement in that affidavit. Paragraph 7 of the affidavit states that the "only arguable 'estate planning' advice" that Konchal gave Walker was to confirm Walker's preexisting understanding concerning the effect of holding property with another person as joint tenants with rights of survivorship and what happens to the title to the property upon the death of one of the joint tenants. This is not an admission of estate planning by Konchal as plaintiff states. Merely informing a person of the effects and ramifications of the manner in which property is titled does not constitute estate planning. A professional engages in estate planning where he advises his client to title property in a certain manner in order to achieve a desired result. Konchal's affidavit makes no mention of advising Walker how to title the property to achieve a particular result, or that a particular result should be achieved, but merely confirmed Walker's understanding of the meaning of holding property as joint tenants with rights of survivorship.

investment for Walker in light of his investment objectives, we again conclude that summary disposition was appropriate. First, plaintiff argues that the cause of action for selling unsuitable securities may be found in the provisions of MCL 451.604(a) (1)(M); MSA 19.776(204)(a)(1)(M), which authorizes the revocation of the registration of a broker for recommending to a customer the purchase, sale, or exchange of a security without reasonable grounds to believe that the recommendation is suitable for the customer on the basis of the customer's circumstances as known by the broker. However, § 204(h) specifically states that a violation of § 204 does not subject a registrant to civil liability to a customer, except to the extent that the violation is contrary to some other provision of the Uniform Securities Act, MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.* Thus by the explicit terms of the statute, plaintiff's reliance on § 204 to establish a cause of action for selling unsuitable securities is frivolous.

Plaintiff also argues that the claim of selling unsuitable securities also can be based on violations of the rules promulgated by the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD). We disagree. With regard to this issue, we are persuaded by the reasoning of Judge (now Justice) BOYLE in *Kirkland v E F Hutton & Co, Inc,* 564 F Supp 427, 443 (ED Mich, 1983), who held that there is no private cause of action by a customer against a broker for violations of the NASD and NYSE rules.

Further, it appears that plaintiff also relies upon the Securities and Exchange Act of 1934 in support of her claim that the defendants had recommended unsuitable investments. However, we need not determine whether a cause of action for selling unsuitable securities is created under the Securi-

ties and Exchange Act of 1934, or the rules promulgated thereunder, because Congress has vested the federal courts with exclusive jurisdiction to resolve claims arising under the 1934 act. 15 USC 78aa; *Emrich v Touche Ross & Co,* 846 F2d 1190, 1197 (CA 9, 1988).

Finally, with respect to plaintiff's unsuitability claim, to the extent that plaintiff argues that she is stating a negligence claim and is merely relying on the above statutes and rules to establish the standard of conduct required of a stockbroker, we would agree that those restrictions on stockbrokers would be probative of the issue, see *Kirkland, supra* at 443, but nevertheless agree with defendants that there exists no genuine issue of material fact concerning any such claim of negligence with respect to defendant Konchal selling unsuitable securities to the decedent. Specifically, plaintiff has produced no evidence to support a claim that Konchal recommended a sale or purchase that was unsuitable for the investment aims of the decedent. In fact, plaintiff, in her deposition, testified that she had no knowledge whether defendant Konchal had recommended to Walker that he engage in the securities transactions that did occur. Furthermore, Konchal's affidavit does not disclose that he recommended any particular course of action to Walker, but that he merely had executed the "unequivocal directive" of Walker to engage in the transactions.[2] Accordingly, even as-

---

[2] Konchal's affidavit is not clear regarding whether Konchal gave advice concerning the mutual funds in which Walker should invest the proceeds from the sales of the Gerber and American Brands stocks. Konchal's affidavit was clear only that Walker directed him to sell the Gerber and American Brands stocks and that he wished to make mutual fund investments. This, however, does not change the result of our analysis. First, plaintiff has still failed to show that Konchal affirmatively recommended a particular purchase to Walker and that that recommendation was unsuitable for Walker's investment goals, and, in any event, a reading of plaintiff's brief on appeal

suming that a stockbroker's recommendation that a client engage in a securities transaction that is unsuitable for the investment goals of the client gives rise to a common-law negligence action, plaintiff has produced no facts supporting the conclusion that Konchal had affirmatively recommended that Walker engage in the complained-of transactions. Further, at least with respect to the subsequent reinvestment, there has been no claim that the transaction was unsuitable. Therefore, the trial court correctly granted summary disposition of this count.

Turning to the claim of excessive trading, or "churning," we again agree with defendants that summary disposition was appropriate. To establish churning, it is necessary to show that the stockbroker has control of the account and that there has been excessive trading in it. *Booth v Peavey Co Commodity Services,* 430 F2d 132, 133 (CA 8, 1970). In the case at bar, plaintiff has produced no facts to support a conclusion that Konchal controlled Walker's account. In fact, as discussed above, the only facts of record indicate that Walker approached Konchal with a specific investment plan in mind, to sell the stockholdings Walker had accumulated over the years and to reinvest the proceeds in other investment vehicles. Furthermore, while it is true that Walker, over the period of several months, did change his investment portfolio, the total number of trades involved were relatively few. Accordingly, we conclude that there is no genuine issue of material fact.

Finally, plaintiff argues that the trial court erred in granting summary disposition in favor of

---

indicates that plaintiff merely claims that the sale of the Gerber and American Brands stock was unsuitable for Walker, not that the subsequent reinvestment of the proceeds of that sale was unsuitable.

defendants of plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act, 18 USC 1961 *et seq.* We disagree. The record is utterly devoid of any evidence that would support a conclusion that defendants engaged in securities fraud or otherwise committed acts that could give rise to a RICO claim. Plaintiff's RICO claim is so lacking in merit that it requires neither reversal nor discussion.

Affirmed. Defendants may tax costs.