SCD CHEMICAL DISTRIBUTORS, INC v MEDLEY

Docket No. 140361. Submitted March 10, 1993, at Detroit. Decided
February 7, 1994, at 9:00 A.M.

SCD Chemical Distributors, Inc., brought an action in the Wayne
Circuit Court against Robert L. Medley, doing business as
Robert L. Medley Co., and R.M. Service Company, Inc., seeking
damages for the alleged fraudulent conveyance of certain assets
of Maintenance Research Laboratory, Inc., to the defendants,
thereby rendering it impossible for the plaintiff to collect as a
judgment creditor of Maintenance Research. The plaintiff al-
leged that the inventory, customer lists, chemical formulas,
trade names, and goodwill of Maintenance Research had been
transferred to the defendants contrary to the provisions of the
Uniform Fraudulent Conveyance Act, sought an accounting
pursuant to MCL 600.3605; MSA 27A.3605, and sought to
pierce the corporate veil of R.M. Service Company so that it
might look to the assets allegedly transferred to the defendants
by Maintenance Research while Medley was its president. The
trial court, Samuel A. Turner, J., granted summary disposition
for the defendants. The plaintiff appealed.

The Court of Appeals *held:*

1. The trial court properly granted summary disposition of
the claim under the Uniform Fraudulent Conveyance Act on
the basis that there was no genuine issue of material fact.
Although the inventory, customer lists, chemical formulas,
product names, and goodwill are assets within the meaning of
the Uniform Fraudulent Conveyance Act, the plaintiff failed to
put forth evidence sufficient to raise a genuine issue of material
fact concerning whether those assets were fraudulently con-
veyed to the defendants before the assets of Maintenance
Research were sold at a court-ordered sale. Moreover, there was
no evidence that Robert Medley either appropriated any corpo-
rate opportunity that Maintenance Research would have been
able to undertake after it had filed for bankruptcy or breached

REFERENCES

Am Jur 2d, Fraudulent Conveyances § 100.

See ALR Index under Assets; Fraudulent Conveyances; Good Will;
Uniform Fraudulent Conveyance Act.

any obligation to Maintenance Research by undertaking the operations of Robert L. Medley Co. and R. M. Service Company, Inc. before the court-ordered sale of the assets of Maintenance Research.

2. Because the plaintiff did not establish a genuine issue of material fact relative to the claim that there was a fraudulent conveyance of assets, there is no need to compel an accounting or to pierce the corporate veil. Accordingly, the trial court properly granted summary disposition with respect to those claims.

3. The trial court did not abuse its discretion by preventing the plaintiff from conducting discovery of the defendants' customers and the business records in the hands of those customers. There was no showing that access to those records would be relevant to proving the alleged fraudulent conveyance of assets to the defendants.

Affirmed.

WHITE, J., concurring in part and dissenting in part, stated that the case should be remanded for further proceedings because there are genuine issues of material fact regarding plaintiff's claims concerning the period between June 1989 and the sale of assets in November 1989 and, therefore, summary disposition was inappropriate.

FRAUDULENT CONVEYANCES — UNIFORM FRAUDULENT CONVEYANCE
ACT — ASSETS — GOODWILL.

Corporate goodwill, to the extent it has value, is an asset within the meaning of the Uniform Fraudulent Conveyance Act (MCL 566.11; MSA 26.881).

*Michael S. Freud,* for the plaintiff.

*Edward A. Schneider, P.C.* (by *Edward A. Schneider),* for the defendants.

Before: SHEPHERD, P.J., and MacKENZIE and WHITE, JJ.

SHEPHERD, P.J. Plaintiff appeals as of right an April 19, 1991, order granting summary disposition for defendants Robert L. Medley, doing business as Robert L. Medley Co., and R.M. Service Company, Inc., pursuant to MCR 2.116(C)(10) and

summary disposition for defendant R.M. Service Company, Inc., pursuant to MCR 2.116(C)(8). Plaintiff also appeals the trial court's orders limiting plaintiff's discovery. We affirm.

I

This case is a continuation of a prior action brought by plaintiff against Maintenance Research Laboratory, Inc., which was wholly owned by Robert Medley, to collect a default judgment. See *SCD Chemical Distributors, Inc v Maintenance Research Laboratory, Inc,* 191 Mich App 43; 477 NW2d 434 (1991). As set forth in *SCD,* pp 44-45, plaintiff, an unsecured creditor of Maintenance obtained a judgment for $28,360.11 plus interest against it in May, 1989. In June, 1989, plaintiff garnished three of Maintenance's accounts receivable, and Maintenance declared bankruptcy.

After Maintenance turned its collateral over to Security Bank, the bank commenced a foreclosure action on its perfected security interest in Maintenance's assets on August 8, 1989. In an order dated November 17, 1989, the trial court determined that Security Bank had a perfected security interest in all the assets of Maintenance that was superior to plaintiff's claim. In the same order, the trial court approved the sale by Security Bank to Rite-Made Chemical Company, Inc., of all the assets of Maintenance. Plaintiff did not appeal this order.

Instead, plaintiff instigated the present action by filing a complaint against defendants on September 8, 1989, which was amended on October 30, 1989, alleging three causes of action. The first count alleged that assets, inventory, customers, and the goodwill of Maintenance were fraudulently conveyed by Robert Medley, while acting as

president of Maintenance, to R.M. Service Company, Inc., and Robert L. Medley Co., two other business entities that were wholly owned by Robert Medley, in violation of the Uniform Fraudulent Conveyance Act, MCL 566.11 *et seq.*; MSA 26.881 *et seq.* The second count, based upon MCL 600.3605(1)(a) and (b); MSA 27A.3605(1)(a) and (b), sought to compel an accounting for the corporate funds and corporate property of Maintenance and to compel Robert Medley to pay to plaintiff, as an unsecured creditor, all sums of money and value of all property allegedly acquired by Medley or transferred to others. The third count sought to pierce the corporate veil of R.M. Service Company, Inc., and to hold Robert Medley and R.M. Service Company liable on the basis of the alleged wrongful transfer of customers, trade formulas, and trade names; the use of Maintenance's premises, employees, equipment, overhead, and other assets without compensation; and the misappropriation of the goodwill of Maintenance.

II

On appeal, plaintiff first argues that the trial court erred in granting summary disposition for defendants Robert Medley, doing business as Robert Medley Co., and R.M. Service Company, Inc., pursuant to MCR 2.116(C)(10), because there was a genuine issue of material fact concerning whether Robert Medley had made a fraudulent conveyance of Maintenance's assets to R.M. Service Company, Inc. We disagree.

A motion for summary disposition under MCR 2.116(C)(10) may be granted when, except with regard to the amount of damages, there is no genuine issue of material fact and the nonmoving party is entitled to judgment or partial judgment

as a matter of law. *Metropolitan Life Ins Co v
Reist,* 167 Mich App 112, 118-119; 421 NW2d 592
(1988). A motion for summary judgment tests the
factual support of a claim. A trial court must
consider the affidavits submitted, pleadings, deposi-
tions, admissions, and documentary evidence. The
party opposing the motion has the burden of show-
ing the existence of a genuine issue of fact. Giving
the benefit of reasonable doubt to the nonmoving
party, a trial court determines whether a record
might be developed that would leave open an issue
upon which reasonable minds might differ. *Id.*

In the Uniform Fraudulent Conveyance Act,
"assets" are defined as follows:

> "[A]ssets" of the debtor means property not
> exempt from liability for his debts. To the extent
> that any property is liable for any debts of the
> debtor, such property shall be included in his
> assets. [MCL 566.11; MSA 26.881.]

The first question presented is whether the
items that plaintiff alleges were transferred by
Robert Medley are assets within the meaning of
the statute.

Although no Michigan case has decided whether
certain of the property in question in this case
constitute assets under the statute, this Court has
observed that we may look to decisions from other
states for guidance when interpreting uniform
acts. *Check Reporting Services, Inc v Mich Nat'l
Bank—Lansing,* 191 Mich App 614, 623; 478 NW2d
893 (1991). In this regard, we note that one state
court has interpreted the Uniform Fraudulent
Conveyance Act to cover any property that has
value, *Marsh v Galbraith,* 31 Tenn App 482, 486;
216 SW2d 968 (1948), and another has held the
contrapositive: that the act does not cover property

that has no value. *Boone v Burden,* 259 Or 402, 404-405; 487 P2d 74 (1971).

We further note that the Michigan Supreme Court in *Maitland v Slutsky,* 281 Mich 669, 675; 275 NW 726 (1937), has held that goodwill, by itself, "was not a property right subject to the claims of creditors." More recently in *Christner v Anderson, Nietzke & Co, PC,* 433 Mich 1; 444 NW2d 779 (1989), a case brought under § 851(1) of the Business Corporation Act, MCL 450.1851(1); MSA 21.200(851)(1), and under Chapter 36 of the Revised Judicature Act, MCL 600.3605; MSA 27A.3605, the Court held that the goodwill of a corporation, which was dissolved to avoid liability, has value.

In light of the foregoing, we believe that the property that plaintiff alleges to have been fraudulently conveyed—the inventory, equipment, customers, chemical formulas, product names, and goodwill of Maintenance Research Laboratory, Inc.,—are assets within the meaning of the statute because each has some value. We note specifically that the chemical formulas and product names of Maintenance are assets for purposes of the Uniform Fraudulent Conveyance Act, even if they are not entitled to protection as trademarks, trade names or trade secrets. Moreover, we note that the goodwill of Maintenance has some value, notwithstanding *Maitland,* because plaintiff does not argue that goodwill alone was conveyed.

Notwithstanding that conclusion, plaintiff has failed to put forward factual support for the claim sufficient to raise a genuine issue of material fact under MCR 2.116(C)(10) that defendant Robert Medley fraudulently conveyed these assets. Here the record shows that all the assets of Maintenance were sold to Rite-Made Chemical Company pursuant to an order of the trial court on Novem-

ber 17, 1989. Further, plaintiff has adduced no facts showing that there was any transfer of assets, such as inventory, equipment, chemical formulas, customer lists or goodwill, without fair consideration for the purpose of defrauding plaintiff in violation of MCL 566.15; MSA 26.885.

Moreover, contrary to plaintiff's allegation, there is no evidence that Robert Medley appropriated a corporate opportunity from Maintenance. As this Court stated in *Production Finishing Corp v Shields*, 158 Mich App 479, 485-486; 405 NW2d 171 (1987), lv den 430 Mich 859 (1988), cert den 488 US 955 (1988), quoting from 18B Am Jur 2d, Corporations, § 1770, pp 623-624:

> "A corporate officer or director is under a fiduciary obligation not to divert a corporate business opportunity for his own personal gain. The rule is that if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake which is, from its nature, in the line of the corporation's business and is of practical advantage to it, and which is one in which the corporation has an interest or a reasonable expectancy, and if, by embracing the opportunity, the self interest of the officer or director will be brought into conflict with that of this corporation, the law will not permit him to seize the opportunity for himself. If he does, the corporation may claim the benefit of the transaction."

According to Medley's deposition testimony, the Robert Medley Co. was established in June 1989, immediately after plaintiff garnished Maintenance's accounts receivable.[1] The Robert Medley

---

[1] This testimony may be erroneous because the record discloses an assumed name certificate showing the formation of the Robert L. Medley Co. on June 4, 1985. This aspect of the testimony is not dispositive, because of our holding that there was no evidence of a fraudulent conveyance.

Co. produces one product, a mold release, for sale to automotive companies. Moreover, the record shows that the Robert Medley Co. does not have the same employees as Maintenance, which sold various chemical products, such as cleaners, lubricants, and sanitizers, to the food industry.

Here plaintiff has not come forward with any evidence to show that Maintenance had any financial ability to undertake any business opportunity once plaintiff garnished its accounts receivable in June 1989. Further, there was no evidence that Robert Medley usurped a business opportunity that was in the line of Maintenance Research Laboratory's business. We further note that there was no covenant not to compete in this case. As it stood, Robert Medley was free to use his skill, experience, and general knowledge to compete against Maintenance after it ceased to function or to assist any other firm in doing the same. See *Binkley v Frutchey Bean Co,* 173 F Supp 516, 523 (ED Mich, 1959), aff'd 279 F2d 685 (CA 6, 1960).

Because plaintiff has not established a genuine issue of material fact relating to the fraudulent conveyance of assets under the Uniform Fraudulent Conveyance Act, there is no need to compel an accounting under MCL 600.3605; MSA 27A.3605 or to pierce the corporate veil. In *Nogueras v Maisel & Associates of Michigan,* 142 Mich App 71, 86; 369 NW2d 492 (1985), this Court set forth the standard for piercing the corporate veil:

> [T]here are three requisites to piercing the corporate veil and finding an identity between business entities. First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff.

In the instant case, we agree with the trial court that plaintiff, by failing to establish that either Robert L. Medley Co. or R.M. Service Company, Inc., was used to commit a fraud or wrong, failed to make the requisite showing necessary to permit the piercing of the corporate veil.

Having concluded that the trial court properly granted summary disposition for defendants under MCR 2.116(C)(10), we need not consider whether summary disposition was properly granted under MCR 2.116(C)(8).

III

Plaintiff also claims that the trial court abused its discretion in limiting discovery in this case.

This Court reviews a trial court's decision to grant or deny discovery for an abuse of discretion. *Hartmann v Shearson Lehman Hutton, Inc,* 194 Mich App 25, 28; 486 NW2d 53 (1992).

In this case, we do not believe that the trial court abused its discretion in preventing plaintiff from conducting discovery of defendants' customers and business records in the hands of those customers. As a review of the record indicates, plaintiff failed to show the trial court how taking the deposition of their customers and gaining access to their customers' business records would be relevant to proving a fraudulent conveyance by defendants. Furthermore, because we have found that there was no fraudulent conveyance, the issue is moot.

Affirmed.

MacKenzie, J., concurred.

White, J. *(concurring in part and dissenting in part).* I dissent in part from the affirmance of the

grant of summary disposition because I believe there are genuine issues of material fact regarding plaintiff's claims concerning the period between June 1989 and the sale of assets to Rite-Made Chemical Company in November 1989. There was evidence that during this period R.M. Service Company, Inc., began manufacturing products using the same product formulas and names as Maintenance Research Laboratories, Inc., and began selling to Maintenance's customers, although R.M. Service Company, Inc., never produced or sold these products before.

I would remand the case for further proceedings, including appropriate discovery, regarding the period beginning June 1989 and ending with the sale of assets to Rite-Made.

In all other respects, I concur in the majority opinion.