# STATE OF MICHIGAN

# COURT OF APPEALS

JOELLE 98 LLC and JOEL CARS EXHIBITION, INC,

Plaintiffs-Appellees,

v

STONE CENTRAL LLC and NAJIB ATISHA,

Defendants-Appellants,

and

WAYNE COUNTY TREASURER AND S & S PROPERTY DEVELOPMENT, INC.

Defendants.

UNPUBLISHED
November 22, 2016

No. 328339
Wayne Circuit Court
LC No. 13-014109-CK

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendants Stone Central, LLC, and Najib Atisha appeal by right a circuit court judgment entered in favor of plaintiff Joel Cars Exhibition, Inc, (Joel Cars), in the amount of $16,778.96.[1] For the reasons set forth in this opinion, we affirm.

## I. FACTS

In 2009, Hussein Hodroj immigrated to Detroit from Lebanon. Hodroj had family in Detroit and he decided to set up a company called Joel Cars to export automobiles. Hodroj purchased industrial property in Detroit to house the business. Hodroj formed Joelle 98, LLC,

---

[1]In their brief on appeal, plaintiffs-appellees incorrectly refer to themselves as "defendants/appellee's" and in the title block as "plaintiff/appellant." In addition, appellees' brief does not conform with the Michigan Court Rules' formatting requirements regarding double-spacing. See MCR 7.212(B). Nevertheless, despite these errors, we have taken the arguments in the brief into consideration in resolving this appeal.

(Joelle) to own the property, which consisted of an industrial building. Joel Cars was located inside the industrial building owned by Joelle.

This dispute arises from the land contract that Joelle signed with defendant Stone Central, LLC, to purchase the industrial property. Stone Central is a limited liability company controlled by defendant Najib Atisha, its sole principle. On July 24, 2009, Joelle entered into the land contract with defendant Stone Central for the purchase of the property. Under the terms of the land contract, Joelle was to make 48 monthly installment payments of $2,097.37 with a down-payment of $50,000. At trial, both Hodroj and Atisha agreed that the land contract erroneously required Joelle to make 48 monthly payments when Joelle should have only been required to make 36 payments. The land contract did not reference property taxes.

Hodroj made the monthly installment payments through Joel Cars' bank account. While Hodroj was making monthly payments, the property taxes went unpaid. In December 2012, the Wayne County Treasurer sent a Notice of Show Cause and Judicial Foreclosure Hearing to Joelle indicating that there was an $8,326.24 tax delinquency on the property and notifying Joelle that a show cause hearing was scheduled for January 31, 2013. Joelle entered into a payment agreement with the Wayne County Treasurer; however, the Treasurer eventually commenced judicial foreclosure proceedings and seized the property. According to defendants, Joelle was able to reacquire the property from the Treasurer.

On October 29, 2013, Joelle commenced this suit against Stone Central, Atisha, the Wayne County Treasurer, the City of Detroit and S & S Property Development, LLC. Apart from Stone Central and Atisha, the other defendants were eventually dismissed from the case and they are not concerned with this appeal. With respect to Stone Central and Atisha, Joelle alleged the following four claims: breach of contract, fraudulent misrepresentation, negligent misrepresentation, and conversion. Joelle alleged that Stone Central and Atisha breached the land contract by failing to pay the property taxes after representing that they would pay the taxes. Joelle alleged that part of the installment payments included principle, interest, and property taxes. Joelle alleged that Atisha received the tax notices via his "sister company 7067 Intervale, LLC," which had the same business address as Stone Central. Joelle alleged that neither Atisha nor Stone Central ever notified him of the unpaid tax assessments and both Atisha and Stone Central refused to cure the tax delinquency. Joelle asserted that Atisha and Stone Central's conduct with respect to the unpaid taxes amounted to a breach of the land contract, misrepresentation and conversion.

On March 20, 2015, Atisha individually moved for summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10). Atisha alleged that he and Joelle were not in privity of contract because Atisha was not a signatory to the land contract. Atisha argued that Stone Central, his LLC, was a separate entity and there were no alleged facts to pierce the corporate veil. Atisha argued that there was nothing to support that he committed a "substantial abuse," with Stone Central, or that he used Stone Central merely as an instrumentality to commit wrong or fraud.

Joelle replied, arguing that Atisha used Stone Central to defraud Joelle. Joelle argued that the land contract was not properly amortized and that Joelle made payments that exceeded its obligations under the land contract by 12 months. Joelle alleged that Atisha and Stone

Central acknowledged the error, yet refused to refund the overpayment. Joelle argued that there were sufficient allegations to pierce the corporate veil. Specifically, Joelle argued that Atisha commingled funds and demanded that installment payments be made to Atisha individually and to three other of Atisha's corporate entities. Joelle attached an affidavit of Hodroj wherein Hodroj averred that Atisha requested that the installment payments be made out to Atisha personally, to Atisha Land Investment, LLC, to Stone Central, and to Intervale, LLC. Joelle also alleged that Stone Central was merely an instrumentality that Atisha used to defraud Joelle in that Atisha was Stone Central's sole member and the subject property was Stone Central's only asset. Joelle argued that Stone Central disbursed all of the installment payments to Atisha and Joelle was left with trying to figure out which entity or individual to attempt to recover from. Joelle requested that the court deny Atisha's motion and allow Joelle to amend its complaint.

The trial court scheduled a motion hearing for April 17, 2015; however, the register of actions indicates that the hearing was canceled and that the court denied Atisha's motion for summary disposition on April 17, 2015. Thereafter, Joelle filed an amended complaint on May 1, 2015. Joelle added allegations that Atisha directed Joelle to send payments to Atisha personally and to multiple different entities controlled by Atisha. Joelle also more specifically alleged that it "made payments over and above the payments required under the Land Contract" and defendants kept the payments without refunding the overpayments.

Following discovery and before trial, the trial court entered a final pretrial order. In the order the parties stipulated that Joelle made 44 payments on the land contract and that amortization was for 36 payments, and that Stone Central's only asset was the property. Joelle contested that it made 46 payments and that it was not refunded for any of the overpayment. Stone Central and Atisha claimed that Joelle owed money despite the overpayments because all of the payments were late. Joelle requested $20,973.70 for overpayments, $20,767.01 for unpaid property taxes, $9,974 to repurchase the property, and $41,974.40 for treble damages for the conversion claim for a total of $93,662.71 plus attorney fees.

The trial court scheduled a bench trial for May 18, 2015. At trial, Hodroj testified that he made 10 payments over the required 36 payments and that neither Stone Central nor Atisha would refund the money. Hodroj explained that Atisha directed him to make the monthly installment payments to Atisha Land Investments. Atisha never complained about the payments and did not charge him a late fee even though some of his payments were late. Hodroj testified that it was Atisha's responsibility to pay the property taxes, but Atisha failed to do so. Hodroj learned of the tax delinquency when he went to obtain a certificate of occupancy from the City of Detroit. Hodroj made two tax payments so he could acquire the certificate. Hodroj testified that he used Joel Cars to make the monthly installment payments to Atisha. Hodroj testified that he owned both Joelle and Joel Cars and he was the sole member of both entities.

Atisha testified that he owned three corporate entities: Stone Central, 7670 Intervale (Intervale), and Atisha Land Investments (Atisha Land). Atisha agreed that Stone Central's only asset was the property that was conveyed to Hodroj under the terms of the land contract. Atisha agree that the land contract should have specified that Hodroj was only required to make 36 monthly installment payments. Atisha explained that Hodroj was not entitled to a refund for any additional payments because Hodroj had incurred late fees and interest. Atisha explained that he was not responsible for the property taxes after Hodroj signed the land contract.

-3-

After cross-examining Atisha, Joelle moved for a directed verdict, arguing that the evidence showed that Hodroj made extra payments and that there should be no offset for late fees because Atisha never charged the late fees. Defense counsel responded that Joelle was not the correct plaintiff because Joel Cars made the monthly installment payments, so defendant, not plaintiff, was entitled to a directed verdict. Defendant argued that because the named plaintiff—i.e. Joelle—did not make any of the overpayments Joelle was not entitled to any refund of the overpayment.

It appears that the trial court denied both motions for a directed verdict and agreed to allow plaintiff to amend the complaint to add Joel Cars to the action. In addition, the court dismissed the claims related to the unpaid property taxes and the misrepresentation claims. The court did not articulate its ruling or rationale on the record, but after Atisha continued his testimony, the court interrupted and indicated that it dismissed the claims involving unpaid taxes and explained that the only issues remaining in the case were as follows:

> Yes, there is a number of payments that were overpaid. There is an issue about whether your client waived the late fee and interest. There's an issue about piercing the corporate veil. And there's an issue about conversion.

Defense counsel then proceeded to continue with his direct examination of Atisha.

On direct, Atisha agreed that the monthly installment payments went directly to Atisha Land because Stone Central did not have any assets and Stone Central owed money to Atisha Land. Atisha agreed that Hodroj made eight overpayments, but testified that Hodroj owed him $10,731.91 of late fees and interest. Atisha agreed that he did not discuss late fees with Hodroj.

> Following closing arguments, the court proceeded to make the following findings of fact:

> The land contract provided for 48 payments, monthly payments. This was in error and apparently a mutual mistake on both parties not realizing that in fact the land contract would be paid off in 36 months or 36 payments. The land contract also provided for interest penalty of two percent from 10 percent to 12 percent when Joelle 98, LLC was in default under the land contract, and a late fee if the payment of principal and interest was not made within 10 days of his due date. Joelle 98, LLC made 44 payments of $2,097.37.

> Pursuant to the instruction of Najib Atisha, most of the payments, if not all the payments were made to [Atisha Land]. Many of the payments made by Joelle 98, LLC were late. However, Mr. Atisha never charged a late fee or interest. In fact never had any discussion with Mr. Hodroj regarding this issue.

> After the payments were made, Mr. Hodroj notified Mr. Atisha that he had overpaid. Mr. Atisha asked to see some records. He indicated he was willing to sit down and discuss this issue but that never occurred. . . .

> In addition, it appears that most of the payments were not made by Joelle 98, LLC but rather by Joel Cars Exporter Expedition, LLC.

The court proceeded to find that there was a breach of contract, "because Stone Central was permitted to collect more than what was required to be paid under the contract. Stone Central never actually received the money because as I explained Mr. Atisha directed that the payments be made to [Atisha Land]." The court also found that there was evidence to pierce the corporate veil as follows:

> I find that Mr. Atisha is using his corporations interchangeably and not keeping them as separate entities depending on what he's trying to do. There really is no reasonable explanation as to why if [Atisha Land] purchased [the property] why Stone Central, LLC would have it as its only asset.
>
> Nor is there any reasonable explanation that Stone Central, LLC's only asset [the property] why would the payments be made to [Atisha Land]. He's obviously treating these separate entity corporations as if they were one.
>
> Moreover, there's a problem with doing that and this case is a good example of it. Because when you do something like that, when Stone Central, LLC should have received the excess funds that were paid by [Joel Cars], the money should be there to repay Joel [Cars]. However, the money's not there because Mr. Atisha made this decision to comingle funds among his LLC's.
>
> Accordingly, I find from both of those reasons that the corporate veil should be pierced, that Mr. Atisha should be responsible also on the breach of contract action.

The court proceeded to find that Atisha received eight overpayments for a total amount of $16,778.96 and that the overpayment should be refunded to Joel Cars. The court rejected plaintiff's conversion claim and reasoned that the overpayments amounted to a breach of contract. The court then rejected defendants' request to offset the overpayments with late fees and interest because Atisha never informed Hodroj that he was expected to pay the late fees and interest.

After trial, on June 18, 2015, the trial court entered a written order adding Joel Cars as a plaintiff and granting defendants' motion to add set-off as an affirmative defense. On the same day, the court entered a judgment awarding Joel Cars $16,778.96. This appeal ensued.

## II. ANALYSIS

On appeal, defendants argue that the trial court erred in allowing plaintiff Joelle to amend the complaint and add Joel Cars as a plaintiff.

Leave to amend pleadings "shall be freely given when justice so requires." MCR 2.118(A)(2). A motion to amend may be denied for several reasons including, but not limited to:

> (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment. Absent bad faith or actual prejudice to the

opposing party, delay, alone, does not warrant denial of a motion to amend. [*Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014) (quotation marks and citations omitted).]

A circuit court's decision on a motion to amend is reviewed for an abuse of discretion. *Id.* at 215-216. "An abuse of discretion occurs when the trial court chooses an outcome falling outside a range of principled outcomes." *PCS4LESS, LLC v Stockton*, 291 Mich App 672, 676-677; 806 NW2d 353 (2011).

In this case, defendants cannot show that the trial court's decision to add Joel Cars amounted to an abuse of discretion. MCR 2.118(A)(2) allows amendment by leave of the court and directs that "[l]eave shall be freely given when justice so requires." In this instance, it appears the trial court reasoned that justice required an amendment because Joel Cars was the entity that made payments to defendants and it was undisputed that Joel Cars overpaid the amount due on the land contract. Thus, it was not outside the range of reasonable and principled outcomes for the trial court to conclude that justice required amending the pleading to add Joel Cars into the suit to prevent defendants from obtaining a windfall and not having to refund the overpayments. Moreover, defendants cannot show that they were prejudiced. In this case, both Hodroj and Atisha used multiple LLCs and corporate entities in the course of their business dealings. All of the entities were co-mingled. Joel Cars and Joelle were controlled by the same individual, Hodroj, and had the same business address. In essence, for purposes of this case, there was no real difference between Joel Cars and Joelle—they were both instrumentalities of Hodroj. The only difference between the two entities appears to have been their bank accounts.

Defendants argue that they were prejudiced because they did not have opportunity to "take any discovery regarding this company," or "review any documents kept by or establishing [Joel Cars]." Initially we note that defendants were aware that Joel Cars made the payments. Defendants received checks from Joel Cars and Joelle attached copies of the checks to its reply to defendants' motion for summary disposition. Thus, defendants could have requested documents from Joel Cars had they deemed those documents necessary for their defense. Moreover, defendants fail to articulate how additional discovery would have made any difference in a trial where there was no dispute that Joelle, through Joel Cars, overpaid the amount due on the land contract. The only disputed issue was whether defendants were entitled to an offset and the trial court concluded that defendants were not because defendants did not notify or attempt to enforce any late fees against Hodroj. Thus, no additional discovery would have had any impact on the issues central to this case.

Furthermore, even assuming arguendo that justice did not require allowing plaintiff Joelle to amend the pleading, defendants would still have been liable to refund the overpayments. In their motion for directed verdict, defendants argued that Joelle was not entitled to any refund of the overpayments because Joel Cars made payments, not Joelle. However, this theory would not have barred Joelle from recovering. It was undisputed that defendants received more than what they were owed on the land contract. Specifically, there was no dispute that defendants received eight extra payments on the land contract, payments which they were not entitled to. The only issue was whether the overpayments would be offset by late fees and interest. Thus, irrespective

of which corporate entity actually wrote the checks, the evidence was clear that the payments were made on behalf of Joelle and that there was an overpayment. Joelle would have been entitled to recover for the overpayments irrespective of whether Joel Cars was a plaintiff in the proceeding. Accordingly, defendants cannot show that they were prejudiced when the trial court granted plaintiff Joelle's motion to amend the pleadings.

Next, defendants argue that the trial court erred in piercing the corporate veil and holding that Atisha was individually liable for the overpayments on the land contract.

We review de novo a trial court's decision whether to pierce the corporate veil "because of the equitable nature of the remedy." *Foodland Distributors v Al-Naimi*, 220 Mich App 453, 456; 559 NW2d 379 (1996). To the extent the trial court makes factual findings in support of its decision, we review findings of fact for clear error. *Teran v Rittley*, 313 Mich App 197, 213; 882 NW2d 181 (2015).

"Michigan courts typically consider corporations legally distinct from their shareholders, even if a single shareholder owns all the stock." *Dep't of Consumer Ind Serv v Shah*, 236 Mich App 381, 393; 600 NW2d 406 (1999). "However, when this fiction is invoked to subvert justice, it may be ignored by the courts." *Foodland Distributors*, 220 Mich App at 456. "There is no single rule delineating when the corporate entity may be disregarded." *Id*. (quotation marks and citations omitted). "[T]he entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Id*. (quotation marks and citations omitted). This Court has previously articulated the proper standard for piercing the corporate veil: "First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff." *SCD Chemical Distributors, Inc v Medley*, 203 Mich App 374, 381; 512 NW2d 86 (1994) (citation omitted).

In this case, the trial court did not err in finding grounds to pierce the corporate veil. Here, evidence showed that Atisha had multiple corporate entities including Stone Central and he used these entities as his instrumentalities. *Id*. Atisha co-mingled the assets of the entities and had Hodroj make the installment payments to different entities including Atisha Land. Furthermore, Atisha admitted that Stone Central's only asset was the property and after the property was conveyed to Joelle, Stone Central did not have any assets and the installment payments were not directed to Stone Central. Indeed, after the land conveyance, it appears that Stone Central existed only on paper. Stone Central did not have any assets and it was not engaged in any business. Furthermore, in this proceeding, Atisha essentially sought to use Stone Central's corporate entity to avoid refunding the overpayments. *Id*. Specifically, there was no dispute that Hodroj overpaid on the land contract and that Stone Central did not have any assets. Thus, by arguing that Atisha should not be personally liable to refund the overpayments, defendants essentially argue that Hodroj should be limited to recovering from Stone Central, which would in turn bar Hodroj from recovering anything because Stone Central did not have any assets. By failing to pierce the corporate veil, Hodroj's entities would suffer an unjust loss and injury in that they would be unable to recover anything from Stone Central.

In their appeal brief, defendants state "[m]ost egregious, [piercing the corporate veil] was not even a claim in Appellee's Complaint or Amended Complaint!!!" To the extent that this sentence is an argument, defendants fail to cite any law or develop a coherent argument to support that piercing the corporate veil must be plead as a separate and distinct cause of action. It is not sufficient for a party "simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, we need not address this argument and decline to do so.[2]

In sum, having reviewed the facts and circumstances of this case, we conclude that the trial court did not err in piercing the corporate veil and holding Atisha personally liable for the breach of contract claim. *Medley*, 203 Mich App at 381.

Affirmed. Having prevailed in full, appellees may tax costs. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello

---

[2] Even if we were to address defendants' argument, there is no authority to support that piercing the corporate veil must be pled as a separate and distinct cause of action. See e.g. *In re RCS Engineered Prods Co*, 102 F 3d 223, 226 (CA 6, 1996) (noting that piercing the corporate veil "is not by itself a cause of action," but rather an equitable doctrine "which fastens liability to the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business. . . .") (quotation marks omitted).