Argued and submitted March 13, custody order reversed; amount of arrearage
modified; otherwise affirmed December 30, 1992

STATE OF OREGON ex rel,
STATE OF WASHINGTON ex rel,
Jesse Lane Efaw and Bethany Efaw,
minor children,
*Petitioners,*

Patricia Jean CHAPMAN,
*Statutory Party-Appellant,*

*v.*

Martin BUE,
*Respondent.*

(F-91018; CA A71686)

844 P2d 278

Nancy G. Neslund, Salem, argued the cause for appellant. With her on the brief was Neslund and Neslund, Salem.

Blair J. Henningsgaard, Astoria, argued the cause for respondent. With him on the brief was Brownhill & Henningsgaard, Astoria.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

**DEITS, J.**

Mother, a Washington resident, sought child support from father, an Oregon resident, for the parties' two children, under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). ORS 110.005 *et seq.* The petition for support was heard in Clatsop County Circuit Court. The court issued a judgment establishing paternity, setting child support, assessing arrearages and granting custody to mother and visitation rights to father. Mother appeals.

The parties were never married. Their two minor children, ages 9 and 12, were born and raised in Clallam County, Washington, where they live with mother. Father resides in Clatsop County. The children have never lived with him and, until the initiation of this proceeding, he did not visit them. At the hearing, father testified that he thought that his parental rights to the older child had been terminated when he agreed to her adoption in 1982. There was no adoption, and neither party presented any other evidence on this issue.

This proceeding began in 1988, when mother contacted the support enforcement authorities in Washington, seeking to obtain child support from father. In April, 1990, father received a notice of financial responsibility for the children, setting his interim support obligation at $517 per month.[1] A petition was filed in the Washington Superior Court and, because father lived in Astoria, the case was forwarded to the Clatsop County Circuit Court in Oregon. ORS 110.132.

Although mother sought only support, the petition also requested that custody and visitation issues be addressed. Mother brought that to the attention of both the Oregon and Washington authorities and advised them that she was not seeking review of those issues in the Oregon court. Nonetheless, over mother's objection, the trial court heard evidence on those issues and granted custody to mother, allowing father visitation. It also ordered that father pay a total of $572 per month in child support for both children and $4,136 in arrearages.

---

[1] At that time, father contested paternity. However, he conceded that issue at the hearing.

■ Mother first assigns error to the part of the order allowing father visitation rights, arguing that the court lacked jurisdiction to act on that issue under the Uniform Child Custody Jurisdiction Act (UCCJA). ORS 109.700-ORS 109.930. "Custody" under UCCJA includes the determination of visitation rights. ORS 109.710(2). A court of this state that is competent to decide child custody matters has jurisdiction if:

"(a)   This state is the home state of the child at the time of commencement of the proceeding * * *;

"(b)   It is in the best interest of the child that a court of this state assume jurisdiction because the child and the parents of the child, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

"(c)   The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child * * *;

"(d)   It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b) or (c) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction." ORS 109.730(1).

Here, the only provision that might provide a basis for jurisdiction is subsection (b), which requires a finding that the children have a significant connection to the state. *See, e.g., Henricks and Henricks*, 115 Or App 718, 839 P2d 766 (1992). Other than the fact that father and other family relatives live in Oregon and that the children make occasional visits to Oregon with their mother, the children have no connections with the state. They have lived their entire lives with mother in Washington and, aside from a four-month relationship in approximately 1982 when the second child was conceived, had no contact with their father before the proceeding began. There is no indication that substantial evidence concerning the children's present or future care, protection, training or personal relationships is available in

Oregon. We conclude that it was not in the best interests of the children for Oregon to exercise jurisdiction over custody.

Moreover, the court's exercise of custody jurisdiction in this case is inconsistent with the general purpose of UCCJA to

"[a]ssure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the family of the child have the closest connection and where significant evidence concerning care, protection, training, and personal relationships of the child is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and the family of the child have a closer connection with another state[.]" ORS 109.720(1)(c).

Washington is the children's home state. ORS 109.710(5). They have never lived in Oregon and mother, who lives with children in Washington, could best provide evidence concerning their welfare.

▪ Father argues that, by including custody issues in the RURESA petition, mother waived any challenge to jurisdiction in Oregon under UCCJA. The contents of the petition do not control the authority of the courts of Oregon, the responding state, to decide the issues raised. That authority is derived from Oregon's law, including RURESA. Under that act, the authority of the responding state is limited and does not include authority to decide issues of custody and visitation. However, because the pleadings sought a determination of custody and visitation, the trial court could look to sources of law other than RURESA for authority. Custody and visitation jurisdiction is controlled by UCCJA and, under that act, the trial court did not have authority to decide custody or visitation.

▪ In her next assignment of error, mother contends that the trial court erred in limiting father's arrearage obligation to $4,136. At the time of the hearing, the support arrearage was $8,272, calculated by multiplying father's interim monthly obligation, $517, by 16, the number of months from the time that he received notice of his financial obligation. The trial court divided that amount in half, reasoning that, because father believed that the older child had been adopted, he did not have an obligation to support the child until the date of the hearing. The child was not adopted

and, even assuming that father's belief that he was adopted excused him from a duty of inquiry, once he received the notice of financial obligation in April 1990, he at least had the responsibility to inquire about his financial responsibility for the child. *See Saulsbury and Saulsbury*, 104 Or App 678, 682, 802 P2d 707 (1990). We see no reason to limit father's arrearage to half the accrued amount. Accordingly, we modify the order to set the arrearage at $8,272.

Finally, mother claims that the trial court erred in setting father's child support obligation at $572 per month instead of $577 per month. Mother attributes the difference to a clerical error and asks this court to modify the order. Father claims that the amount in the order is correct according to the child support guidelines in effect at the time of the hearing. He is correct. The hearing took place in August 1991, and, according to the guidelines at that time, the obligation should have been $572 per month for both children. The trial court's order was proper.

Custody order reversed; amount of arrearage modified to $8,272; otherwise affirmed. Costs to mother.