WHITE v HARRISON-WHITE

Docket No. 272612. Submitted March 4, 2008, at Grand Rapids. Decided
August 21, 2008, at 9:10 a.m.

Kevin R. White obtained a divorce from Diane M. Harrison-White in
the Kent Circuit Court, which awarded the parties joint legal
custody of their son, Callum White, primary physical custody to
the defendant, and liberal parenting time to the plaintiff. The
plaintiff's parenting time was to be spent in Michigan and in
Ontario, Canada, where the parties were originally from and
where the defendant and the parties' son relocated before the
plaintiff filed for divorce. The defendant subsequently filed a
motion in the circuit court for a finding that the court lacked
exclusive, continuing jurisdiction under MCL 722.1201(1)(a), a
provision of the Uniform Child-Custody Jurisdiction and Enforce-
ment Act (UCCJEA) that states, in part, that a Michigan court
that has made an initial child-custody determination has exclusive,
continuing jurisdiction over the child-custody determination until
a Michigan court determinates that neither the child nor the child
and one parent have a significant connection with Michigan and
that substantial evidence is no longer available in Michigan
concerning the child's care, protection, training, and personal
relationships. The court, Kathleen A. Feeney, J., granted the
motion. The plaintiff appealed by leave granted.

The Court of Appeals *held*:

The significant connection that permits the exercise of exclu-
sive, continuing jurisdiction under MCL 722.1202(1)(a) exists
where one parent resides in Michigan, maintains a meaningful
relationship with the child, and, in maintaining the relationship,
exercises parenting time in Michigan. Such significant connection
is present in this case.

Reversed and remanded.

PARENT AND CHILD — UNIFORM CHILD-CUSTODY JURISDICTION AND ENFORCEMENT
ACT — INITIAL CUSTODY DETERMINATION — EXCLUSIVE, CONTINUING JU-
RISDICTION.

A Michigan court that made the initial child-custody determination
in a divorce proceeding has exclusive, continuing jurisdiction over

the child-custody determination where the child and one parent
have a significant connection with Michigan; such connection
exists where one parent resides in Michigan, maintains a mean-
ingful relationship with the child, and, in maintaining the rela-
tionship, exercises parenting time in Michigan (MCL
722.1202[1][a]).

*Strain, Murphy & Vanderwal, P.C.* (by *Peter D.
Bosch*), for the plaintiff.

*Margaret E. Allen* for the defendant.

Before: FITZGERALD, P.J., and SMOLENSKI and BECKERING,
JJ.

PER CURIAM. Plaintiff appeals by leave granted the
May 19, 2006, trial court order granting defendant's
motion for a finding that the court lacked exclusive,
continuing jurisdiction under the relevant provision of
the Uniform Child-Custody Jurisdiction and Enforce-
ment Act (UCCJEA), MCL 722.1202(1)(a). We reverse
and remand for proceedings consistent with this opin-
ion.

I

The parties were married in Ontario, Canada, in
September 1993, and their son, Callum White, was born
in Ontario in July 1997. In May 2000, plaintiff began
employment in Grand Rapids, Michigan. He then com-
muted between Ontario and Michigan for almost one
year. In February 2001, plaintiff, defendant, and Callum
moved to Rockford, Michigan. But, by February 2004,
the parties' marriage had broken down and defendant
and Callum returned to Ontario, where they currently
reside.

Plaintiff filed for a divorce in March 2004. The trial
court issued a temporary order dated July 6, 2004,

stating that plaintiff "shall exercise parenting time with the parties' minor child every other weekend . . . with every other visitation occurring in Ontario, Canada and every other visitation occurring in Rockford, Michigan," as well as alternating holiday and vacation parenting time. The court entered a judgment of divorce in July 2005, awarding joint legal custody to the parties, but primary physical custody to defendant. The divorce judgment awarded plaintiff liberal parenting time to be exercised in Michigan and Ontario.

The parenting time provisions of the divorce judgment were twice amended, and the August 29, 2005, amendment to the judgment provides, in part:

> The Plaintiff shall have reasonable and liberal parenting time with the parties' minor child, including but not limited to alternating weekends and every other holiday. The weekend and holiday visitation shall be as follows:
>
> A. Every other weekend as set forth in the Court's Order dated July 6, 2004.
>
> B. From December of 2005 through March of 2006, the Plaintiff shall exercise parenting time as set forth in the Court's Temporary Order dated July 6, 2004. In that regard, the Plaintiff shall exercise his parenting time with the child in Ontario, Canada with alternating weekends of the parenting time being exercised in the United States.
>
> C. Beginning in April of 2006 and continuing through November of 2006 and for similar periods in calendar years thereafter, the Plaintiff shall have the right to exercise his parenting time in the United States for two alternate weekends in a row, with parenting time for the third alternate weekend being exercised in Canada.
>
> D. Beginning in April of 2007 and continuing through November of 2007 and for similar periods in calendar years thereafter, the Plaintiff may exercise his parenting time in the United States for three consecutive alternating weekends, with the fourth being exercised in Ontario, Canada.

The amendment further provides that plaintiff shall be entitled to regular telephone contact with Callum, alternating holiday parenting time, and vacation parenting time, including, but not limited to, every other spring vacation, half of Christmas vacation and, beginning in 2008, three consecutive weeks of summer vacation. In an order dated March 20, 2006, the trial court granted plaintiff's request for make-up visitation, as well as parenting time on Christmas Day 2006 and 2007.

On March 30, 2006, defendant moved for a finding that the trial court no longer had exclusive, continuing jurisdiction over custody determinations in this case, pursuant to MCL 722.1202(1)(a) and (b). The trial court granted defendant's motion in a May 19, 2006, order, determining that it no longer had jurisdiction under "MCL 722.1202(1)(a) and 722.1203" because "neither the child nor his parents [sic] have a significant connection with the State of Michigan and substantial evidence is no longer available in the state concerning the child's care, protection, training and personal relationships . . . ." The court noted at the hearing on the matter, however, that it was reluctant to grant the motion because it seemed illogical to divest the court of jurisdiction considering that defendant had submitted to the jurisdiction of the Michigan courts at the time of the divorce judgment and subsequent custody rulings, despite the fact that she and Callum were already living in Ontario. We subsequently granted plaintiff's delayed application for leave to appeal. *White v Harrison-White*, unpublished order of the Court of Appeals, entered November 27, 2006 (Docket No. 272612).

II

In this case of first impression, we are asked to construe the meaning of MCL 722.1202(1)(a), particu-

larly the phrase "significant connection," to determine whether exclusive, continuing jurisdiction remained in Michigan under the circumstances presented. The determination whether a trial court has subject-matter jurisdiction and issues of statutory construction present questions of law, which we review de novo. *Atchison v Atchison*, 256 Mich App 531, 534-535; 664 NW2d 249 (2003).

As this Court stated in *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389-390; 559 NW2d 98 (1996):

> The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature in enacting a provision. Statutory language should be construed reasonably, keeping in mind the purpose of the statute. The first criterion in determining intent is the specific language of the statute. If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. However, if reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. [Citations omitted.]

Every word or phrase of a statute should be accorded its plain and ordinary meaning, but if the legislative intent cannot be determined from the statute itself, this Court may consult dictionary definitions. *Haynes v Neshewat*, 477 Mich 29, 36; 729 NW2d 488 (2007). Additionally, decisions from other states may guide this Court when interpreting uniform acts. *SCD Chem Distributors, Inc v Medley*, 203 Mich App 374, 378; 512 NW2d 86 (1994).

III

The UCCJEA was promulgated by the National Conference of Commissioners on Uniform State Laws in 1997 and became effective in Michigan in 2002. *Atchi-*

*son, supra* at 536. The UCCJEA was designed to replace the Uniform Child Custody Jurisdiction Act (UCCJA) and "rectify thirty years of inconsistent case law and revise child-custody jurisdiction in light of overlapping federal enactments." *Id.* The UCCJEA was further designed to

> (1) rectify jurisdictional issues by prioritizing home-state jurisdiction, (2) clarify emergency jurisdictional issues to address time limitations and domestic-violence issues, (3) clarify the exclusive continuing jurisdiction for the state that entered the child-custody decree, (4) specify the type of custody proceedings that are governed by the act, (5) eliminate the term "best interests" to the extent that it invited a substantive analysis into jurisdictional considerations, and (6) provide a cost-effective and swift remedy in custody determinations. [*Id.*]

When applying the general and jurisdictional provisions of the UCCJEA, a foreign country is treated as a state of the United States. *Id.* at 537.

MCL 722.1202, which provides for the retention of exclusive, continuing jurisdiction for the state that entered the custody decree, was specifically designed to "rectify conflicting proceedings and orders in child-custody disputes." *Id.* at 538. MCL 722.1202 states, in relevant part:

> (1) Except as otherwise provided in section 204[1], a court of this state that has made a child-custody determination consistent with section 201[2] or 203[3] has exclusive, continuing jurisdiction over the child-custody determination until either of the following occurs:

---

[1] MCL 722.1204 provides temporary emergency jurisdiction if the child has been abandoned or is threatened with mistreatment or abuse.

[2] MCL 722.1201 provides jurisdiction for an initial custody determination.

[3] MCL 722.1203 governs the modification of custody determinations made by other states.

(a) A court of this state determines that neither the child, nor the child and 1 parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.

(b) A court of this state or a court of another state determines that neither the child, nor a parent of the child, nor a person acting as the child's parent presently resides in this state.

(2) A court of this state that has exclusive, continuing jurisdiction under this section may decline to exercise its jurisdiction if the court determines that it is an inconvenient forum under section 207.[4]

Under MCL 722.1202(1)(a), a court of this state that makes an initial custody determination retains exclusive, continuing jurisdiction until neither the child nor the child and one parent or a person acting as a parent "have a significant connection with this state" *and* "substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships." The Legislature's use of the term "and" compels the conclusion that jurisdiction is retained until both the requisite significant connection and the requisite substantial evidence are lacking. See *Karaczewski v Farbman Stein & Co*, 478 Mich 28, 43; 732 NW2d 56 (2007). The literal meanings of the terms "and" and "or" should be followed if they do not render the statute dubious. *Auto-Owners Ins v Stenberg Bros*, 227 Mich App 45, 50-51; 575 NW2d 79 (1997); *Root v Ins Co of North America*, 214 Mich App 106, 109; 542 NW2d 318 (1995). Here, a literal reading of the term "and" does not render the statute dubious; instead, *it* provides a clear, two-pronged test for exclusive, con-

---

[4] MCL 722.1207 provides that a court may decline jurisdiction if it is an inconvenient forum.

tinuing jurisdiction. Therefore, we conclude that a literal reading was intended. Further, we note that our literal interpretation of the statute's plain, unambiguous language comports with that of a majority of jurisdictions. See, e.g., *West v West*, 364 Ark 73, 84; 216 SW3d 557 (2005); *In re Forlenza*, 140 SW3d 373, 379 (Tex, 2004); *Benson v Benson*, 667 NW2d 582, 585 (ND, 2003); *Griffith v Tressel*, 394 NJ Super 128, 141; 925 A2d 702 (2007); *Grahm v Superior Court*, 132 Cal App 4th 1193, 1196; 34 Cal Rptr 3d 270 (2005); *Fish v Fish*, 266 Ga App 224, 226-227; 596 SE2d 654 (2004); *Ruth v Ruth*, 32 Kan App 2d 416, 421; 83 P3d 1248 (2004); but see, e.g., *In re Marriage of Medill*, 179 Or App 630, 641-642; 40 P3d 1087 (2002).

In this case, the trial court determined that it no longer had exclusive, continuing jurisdiction under MCL 722.1202(1)(a), given a lack of significant connection and substantial evidence. We find, however, that the requisite significant connection exists in this case.

The phrase "significant connection" is not defined in the UCCJEA. *Random House Webster's College Dictionary* (2005) generally defines the term "significant" as "important; of consequence," or "having or expressing a meaning," and the term "connection" as "the state of being connected," or an "association; relationship." Therefore, pursuant to the plain and ordinary meaning of the phrase "significant connection," exclusive, continuing jurisdiction is retained under MCL 722.1202(1)(a) as long as the child and at least one parent have an important or meaningful relationship to the state. See *Haynes, supra* at 36.

Next, we consider how other jurisdictions have interpreted the phrase "significant connection" in provisions similar to MCL 722.1202(1)(a). See *SCD Chem Distributors, Inc, supra* at 378. Defendant urges this Court

to adopt Oregon's narrow interpretation of "significant connection." In *Medill, supra,* the Oregon Court of Appeals found a lack of significant connection where the children were born in Germany, lived in Germany for the majority of their lives, and made only one visit to Oregon after their father moved there. *Id.* at 632-633, 641. The court found that the children's short-term visit to Oregon, coupled with the father's and his family's presence in the state, were not the sort of "maximum rather than minimum contact[s]" required to retain exclusive, continuing jurisdiction under the UCCJEA. *Id.* at 641 (internal quotation marks omitted). In so finding, the *Medill* court relied on prior Oregon cases interpreting the phrase "significant connection" in the UCCJA. *Id.,* citing *Stubbs v Weathersby,* 320 Or 620, 627-628 n 4; 892 P2d 991 (1995) (stating that to establish a significant connection, there must be maximum rather than minimum contact with the state), and *State ex rel Efaw v Bue,* 117 Or App 477, 480-481; 844 P2d 278 (1992).

On the other hand, plaintiff urges us to adopt a broad interpretation of "significant connection." In *Grahm, supra,* the California Court of Appeals held that "the original state retains continuing exclusive jurisdiction [under the UCCJEA] as long as the parent who is exercising visitation rights still lives in that state and the relationship between that parent and the child has not deteriorated to the point at which the exercise of jurisdiction would be unreasonable." *Id.* at 1200. Like the *Medill* court, the *Grahm* court based its holding on a prior California case interpreting the phrase "significant connection" in the UCCJA. *Id.,* citing *Kumar v Superior Court,* 32 Cal 3d 689; 186 Cal Rptr 772; 652 P2d 1003 (1982). Additionally, the *Grahm* court reasoned that its interpretation of "significant connection" comports with the intended application of the UCCJEA,

that " '[s]o long as one parent, or person acting as a parent, remains in the state that made the original custody determination, only that state can determine *when the relationship between the child and the left-behind parent has deteriorated sufficiently so that jurisdiction is lost.*' " *Grahm, supra* at 1198, quoting Spector, *Uniform child-custody jurisdiction and enforcement act (with prefatory note and comments)*, 32 Fam L Q 301, 340 n 81 (1998) (italics added in *Grahm*); see also UCCJEA, § 202 comment 1 ("If the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist."). The court further found that even if it adopted the *Medill* court's narrow interpretation of "significant connection," a significant connection existed in *Grahm. Grahm, supra* at 1199. The parties' children were born in California and resided there for half of their life, and their father was granted specific periods of custody in California. *Id.*

After a comprehensive review of the cases addressing this issue, it is apparent that a majority of jurisdictions have found a significant connection under provisions similar to MCL 722.1202(1)(a) where one parent resides in the state and exercises at least some parenting time in the state. The Kansas Court of Appeals has held, in accordance with UCCJEA, § 202 comment 1, that "[t]he state where the original decree was entered retains exclusive, continuing jurisdiction over child custody determinations provided the general requirement of the substantial connection jurisdictional provisions are met, even if a child has acquired a new home state. However, exclusive, continuing jurisdiction will no longer exist if the relationship between the child and the person remaining in the state with exclusive, con-

tinuing jurisdiction becomes so attenuated that a court could no longer find significant connections and substantial evidence." *Ruth, supra* at 421, citing *Benson, supra* at 585. Applying this standard, the court found that a significant connection existed where the father resided in Kansas, and the children visited Kansas two weekends each month and eight weeks during the summer. *Ruth, supra* at 421-422. The Kentucky Court of Appeals has adopted the exclusive, continuing jurisdiction standard articulated by the Kansas and North Dakota courts, and found that a significant connection existed where the children's father and their sibling resided in Kentucky and visitation took place in Kentucky. *Wallace v Wallace*, 224 SW3d 587, 590 (Ky App, 2007).

Similarly, in *Fish, supra* at 226, the Georgia Court of Appeals found a significant connection where the father lived in Georgia, visitation occurred in Georgia, the children spent Spring Break and the month of July in Georgia, and the parties agreed to jurisdiction in Georgia. The court pointed out that because the mother had agreed that Georgia courts had jurisdiction to modify the original custody decree, she could not "evade that jurisdiction based on her residency in a different state, as that is the exact result that the UCCJEA was designed to prevent." *Id.* In *West, supra* at 84, the Arkansas Supreme Court found a significant connection where the father and his relatives lived in Arkansas and the children spent at least 20 percent of their time with him in Arkansas. A New York court found a significant connection where the mother and child resided in Norway, but the father resided in New York. *EB v EFB*, 7 Misc 3d 423, 431; 793 NYS2d 863 (2005). The child returned to New York for several weeks at a time to visit his father pursuant to a written agreement. *Id.* A number of other states have applied provisions

similar to MCL 722.1202(1)(a) in the same manner. See, e.g., *Griffith, supra* at 145-148 (finding a significant connection where the father resided in New Jersey and the child spent at least 20 percent of each year in New Jersey), citing *Forlenza, supra, Horgan v Romans*, 366 Ill App 3d 180; 851 NE2d 209 (2006), and *Steckler v Steckler*, 921 So 2d 740 (Fla App, 2006).

Considering the foregoing, we conclude that the significant connection that permits exercise of exclusive, continuing jurisdiction under MCL 722.1202(1)(a) exists where one parent resides in the state, maintains a meaningful relationship with the child, and, in maintaining the relationship, exercises parenting time in the state. Our interpretation of the phrase "significant connection" comports with that of a majority of jurisdictions, the plain and ordinary meaning of the phrase, and the overarching purpose of the UCCJEA to prevent jurisdictional disputes by granting exclusive, continuing jurisdiction to the state that entered the initial custody decree, so long as the relationship between the child and the parent residing in the state does not become so attenuated that the requisite significant connection no longer exists. See *Atchison, supra* at 536, 538, and UCCJEA, § 202 comment 1. Our interpretation of "significant connection" is neither so narrow that it requires "maximum rather than minimum contact" with the state, see *Medill, supra*, nor is it so broad that it primarily focuses on the residency of the noncustodial parent, see *Grahm, supra*.

In reaching this conclusion, we acknowledge defendant's argument that a broad interpretation of "significant connection" could produce "nonsensical results," meaning that a court of this state could retain jurisdiction where substantial evidence concerning the child's

care, protection, training, and personal relationships is no longer available in the state, but "the child continues to visit the remaining parent in the state, however rarely." We note, however, that MCL 722.1202 safeguards against nonsensical results. Even if a court of this state determines that it has exclusive, continuing jurisdiction under MCL 722.1202(1)(a) on the basis of either significant connection or substantial evidence, the court may decline to exercise its jurisdiction if it determines that it is an inconvenient forum under MCL 722.1207. MCL 722.1202(2). The trial court did not assess whether Michigan is an inconvenient forum and defendant has not raised the issue on appeal.

As stated earlier, we find that the significant connection that permits exercise of exclusive, continuing jurisdiction is present in this case. The parties and their son, Callum, are originally from Ontario, but they lived together in Michigan for three years. When the parties separated in 2004, plaintiff remained in Michigan and defendant returned to Ontario with Callum. Defendant submitted to the jurisdiction of the Michigan courts at the time of the divorce judgment and subsequent custody rulings. Since the parties' separation, plaintiff has maintained a meaningful relationship with Callum and regularly exercises parenting time in Michigan. Pursuant to the custody agreement, plaintiff has regular telephone contact with Callum, parenting time on alternating weekends (at least half of which is exercised in Michigan), alternating holiday parenting time, and vacation parenting time, including, but not limited to, every other spring vacation, half of Christmas vacation and, beginning in 2008, three consecutive weeks of summer vacation in Michigan.

Because we conclude that plaintiff and his minor child have a significant connection with this state, it is

unnecessary to consider whether there is substantial evidence available in this state concerning the child's care, protection, training, and personal relationships. One of the two alternative bases for retaining exclusive, continuing jurisdiction under MCL 722.1202(1)(a) is satisfied. Therefore, we reverse the trial court's finding that it lacked jurisdiction over custody determinations in this case and remand the case for entry of an order consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.