*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BREYANKA DEAN,

    Plaintiff-Appellant,

v

CRAIG HUNTER, JR.,

    Defendant-Appellee.

UNPUBLISHED
March 18, 2026
1:32 PM

No. 376734
Macomb Circuit Court
Family Division
LC No. 2022-000602-DP

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

This case involves the parties' minor child, BD, now four years old. Plaintiff, Breyanka Dean, appeals by right the trial court's July 2, 2025 order denying her motion to modify custody of BD. For the reasons that follow, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case began when Dean and the Macomb County prosecutor filed a paternity complaint against defendant, Craig Hunter, Jr., alleging that he was BD's father. Although Hunter stipulated to DNA testing, he was ultimately found in default, and the trial court entered a default judgment of filiation declaring him BD's legal father and awarding Dean sole legal and sole physical custody of BD. Dean subsequently sought permission from the court to change BD's domicile from Michigan to Georgia, which the court granted in November 2023. Thereafter, the court entered a parenting-time order granting Hunter parenting time one weekend per month and two consecutive weeks during the summer.

Problems soon arose regarding Dean denying Hunter parenting time. In September 2024 and December 2024, the Friend of the Court (FOC) sought from the trial court an order requiring Dean to appear and show cause why she should not be held in contempt for violating the parenting-time order. It was alleged that Dean denied Hunter parenting time between June 14, 2024, and July 5, 2024, and November 27, 2024, and December 1, 2024. In November 2024, Dean moved to suspend Hunter's parenting time on an emergency basis, alleging that Hunter "has a documented history of abusive behavior, including instances of physical and emotional abuse toward both myself and our child." Dean also requested that any future contact between Hunter and BD be

-1-

supervised until Hunter demonstrated the ability to safely parent BD. The FOC recommended that the motion be denied, and Dean filed objections to the recommendation, which the trial court granted in part. The court referred the issues of child support and parenting time to the FOC for an investigation and recommendation.

On January 17, 2025, the trial court entered an order adjourning the show-cause hearing that began that day via Zoom to an in-person hearing on February 12, 2025. The order indicated that Dean expressed she would not provide Hunter parenting time, contrary to the court's parenting-time order. On February 12, 2025, the court held Dean in contempt for violating the parenting-time order and granted Hunter make-up parenting time. Specifically, the court ordered that Hunter shall have parenting time from February 23, 2025, to March 3, 2025, and that he shall pick up BD at a police precinct in Georgia. The order stated that if Dean failed to appear at the precinct with BD, the order "shall act as an immediate pick up order" authorizing Hunter to pick up BD with police assistance. The order further stated that if Hunter had to involve the police to retrieve BD, the FOC shall file an emergency motion regarding BD's future placement.

Thereafter, Dean moved for reconsideration, to change jurisdiction of this case to Georgia, for relief from previous orders, and to allow her to appear at two upcoming hearings via Zoom. Hunter moved for a change of custody, indicating that Dean engaged in threatening and harassing behavior during his February 2025 parenting time. Dean then moved "to enforce parenting time," indicating that Hunter denied her communication with BD during his parenting time and refused to return BD after his parenting time. Meanwhile, the trial court denied Dean's request to appear at hearings remotely, indicating that her behavior at the Zoom show-cause hearing was "disruptive and disrespectful and could not be controlled," requiring the court to take a recess during the proceeding. The order stated that Dean's request was "denied due to her previous behavior on [Z]oom." The court also denied Dean's motions to change jurisdiction and for relief from previous orders as well as Hunter's motion to change custody. The court's order stated that if Dean refused to release BD to Hunter for his scheduled parenting time, the court would change custody to provide Hunter with custody of BD. Further, the court modified the parenting-time schedule to provide Hunter parenting time during the first two weeks of each month.

Dean then moved to suspend Hunter's parenting time, alleging that BD was physically and sexually assaulted during his parenting time. Dean asserted that Hunter's seven-year-old and nine-year-old sons punched BD in the face and touched her inappropriately. Hunter filed an emergency motion to change custody, asserting that he flew to Georgia on April 3, 2025, to pick up BD for his parenting time, but Dean refused to appear with BD or respond via the parenting app. She also refused to respond after the police contacted her. He further claimed that Dean was making false allegations against him.

On April 7, 2025, the parties appeared before the FOC via Zoom. Although Hunter filed his emergency motion to change custody earlier that day, the FOC heard the motion at the hearing, which had been previously scheduled. The FOC recommend that the trial court deny Dean's motion to suspend Hunter's parenting time, noting that her allegations of abuse had not been substantiated by a medical provider, law enforcement, or Child Protective Services (CPS). The FOC also recommended that Hunter's motion to change custody be granted on a temporary basis, stating as follows:

Based on the sworn testimony of the parties and this Referee's findings as to the statutory best interest factors, as set forth on the record [sic]. Defendant shall be awarded interim sole legal and physical custody of their minor child "B" age 4. Both parties were advised in the Court's March 10, 2025, Order, that failure to comply with providing/returning the minor child to the other parent for parenting time will result in temporary change in custody. Defendant has established by clear and convincing evidence, that on an interim basis, he should be awarded custody. Defendant flew to Georgia on April 3, 2025, to pick up the minor child for his parenting time. Plaintiff acknowledged not proving the child to Defendant as ordered. This Referee finds that Plaintiff's violation of the Court's March 10, 2025, Order to be [sic] willful and without legal justification. Plaintiff shall return the minor child to Defendant by noon on Friday April 11, 2025. In the event that Plaintiff fails to return the minor child as ordered, Defendant may travel to Georgia to retrieve the minor child to his care and may enlist the assistance of law enforcement to accomplish same.

Further, the FOC recommended that Dean's parenting time be temporarily suspended and that the issue of custody be referred to the FOC and combined with the June 3, 2025, evidentiary hearing regarding parenting time and child support. Finally, the FOC recommended that Dean's request to appear via Zoom at all future hearings be denied.

Dean objected to the FOC's recommendation, arguing that she denied Hunter parenting time to protect BD during the ongoing CPS investigation. A de novo hearing on her objections was scheduled for May 5, 2025. Meanwhile, Hunter filed a motion titled, "Parental Kidnapping," asserting that Dean refused to release BD to his care. On May 5, 2025, the trial court entered an order adopting the FOC's April 7, 2025 recommended order because neither party appeared at the de novo hearing scheduled for that day. Dean did not appeal the order.

Dean also failed to appear at the June 3, 2025 FOC evidentiary hearing at which Hunter testified and presented documentary evidence regarding custody, parenting time, and child support. In addition, despite being ordered to transfer custody of BD to Hunter on or before April 11, 2025, she did not do so until June 5, 2025. On June 20, 2025, Dean filed a motion to modify custody and parenting time, asserting that City of Warren Detective Anthony Rudin informed her that warrants had been submitted to the prosecutor's office. Dean stated, "Although prosecution of children under age 10 may not proceed, the submission of warrants demonstrates that law enforcement has found probable cause to support [BD's] disclosures." It appears from Dean's reference to "children under age 10" that the purported warrants involve Hunter's seven and nine-year-old sons. Dean also moved "to set aside orders issued on June 3, 2025," requesting that the court "set aside and vacate any orders or findings issued following the June 3, 2025 evidentiary hearing"[1] on the basis that she was not provided notice of the hearing and was therefore denied an opportunity to participate, depriving her of due process. Dean noticed her motions for a June 30, 2025 hearing.

---

[1] At the time that Dean filed her motion, no orders or findings had been made with respect to the June 3, 2025 evidentiary hearing.

On June 24, 2025, the FOC recommended that the trial court award Hunter sole legal and physical custody of BD and suspend Dean's parenting time until she completed a psychological evaluation. The FOC also recommended that Dean be required to pay $422 per month in child support, effective January 6, 2025. Dean filed objections to the FOC's recommendation and noticed a hearing for July 7, 2025.

At the June 30, 2025 hearing, Dean stated that CPS was still investigating BD's purported disclosures of abuse. The trial court stated that the investigation could not still be ongoing because CPS was required to substantiate, or not substantiate, abuse allegations within 30 days. Following additional argument, the court recessed to contact Detective Rudin and to review the medical documentation and other exhibits provided. Upon returning to the bench, the court stated:

> [A]t this point the Court's not inclined to change any orders, okay.
>
> The, I [sic] have a police report here from Warren indicating that there are, to the extent that the number of times that welfare checks have been called on your behalf to his home has been so excessive that they're no longer responding to the calls. They're not going to go out anymore and check, because they know, they went to the house, they did welfare checks. The children are safe, healthy, clean, happy and there's no problems at the house, no problems with any of the children. They all appear to be safe and in good spirits and in good health when the police and CPS and when DHS workers went there. So there's been no reports in any capacity that those children are appearing dirty, neglected, hungry, injured or otherwise not supported by the two parents that are living in the home. So I'm not changing any of the orders.
>
> The Referee hearing that was conducted, you didn't show up for that. So I can't redo that hearing because you decided not to appear.
>
> I also have a medical record that was provided by the father, who is the Defendant in this case, from the hospital which indicated there is absolutely no physical evidence of any sexual trauma in any nature whatsoever to this child, this three-year old.
>
> I don't have anything to substantiate that there's anything bad happening at his house, and that the numerous, voluminous number of times that the authorities have gone to his home, the Defendant's home, they found the kids to be totally fine, completely supported by the parents, healthy, happy and safe. Okay. So stop calling the police there if there's no problem.

The trial court offered Dean an opportunity for supervised visitation with BD before she returned to Georgia, but Dean declined. The court also indicated that it would not release BD from the state of Michigan, stating:

> I don't think you'll return her. You've never returned her anytime I've sent her. We've had to fight. We had to do pickup orders. This guy has come to my Court no less than 15 times to effectuate parenting time transfers. I'm not doing that anymore.

-4-

The court informed Dean that she could file objections to the FOC's June 24, 2025 recommended order. When Dean indicated that she had already done so, the court asked whether she wished to proceed with her objections that day instead of returning the following week for the hearing on the objections noticed for July 7, 2025. After Dean agreed, the court stated it would take her objections under advisement and directed her to file the June 3, 2025 transcript of the FOC hearing with the court. The court indicated it would review the matter and determine whether it agreed with the FOC's recommendation.

On July 2, 2025, the trial court denied Dean's motion to "set aside" the June 3, 2025 evidentiary hearing as well as her motion to modify custody and parenting time. The court's order stated that Dean's objections to the FOC's recommendation regarding custody, parenting time, change of domicile, and child support were taken under advisement. On August 5, 2025, Dean filed this claim of appeal from the July 2, 2025 order. This Court denied Dean's motion to return BD to her care pending this appeal.[2] The Michigan Supreme Court likewise denied Dean's motion to return BD pending this appeal.[3] On August 25, 2025, the trial court issued an opinion and order denying Dean's objections and adopting the FOC's June 24, 2025 recommended order.

## II. SCOPE OF APPEAL

Although Dean has raised several issues on appeal, involving numerous orders, only her arguments pertaining to the July 2, 2025 order denying her motion to modify custody and parenting time, as well as her argument challenging the trial court's subject-matter jurisdiction, are properly before this Court. This Court has jurisdiction over an appeal of right from a "final judgment" or "final order" as defined in MCR 7.202(6). MCR 7.203(A)(1); *McCoy v Berrien Co Clerk*, 348 Mich App 602, 610; 19 NW3d 897 (2023). Under MCR 7.202(6)(a)(*iii*), a "final judgment" or "final order" includes "in a domestic relations action, a postjudgment order that, as to a minor, grants or denies a motion to change legal custody, physical custody, or domicile[.]" Generally, "when a party claims an appeal from a final order, it may raise on appeal all issues related to other orders entered in the case." *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 500 n 1; 730 NW2d 481. However, under MCR 7.203(A)(1), "[a]n appeal from an order described in MCR 7.202(6)(a)(*iii*)-(*vi*) is limited to the portion of the order with respect to which there is an appeal of right."

Dean filed her claim of appeal from the July 2, 2025 order, which denied her motion to modify custody and parenting time and her motion to "set aside" the June 3, 2025 FOC hearing. The order also stated that Dean's objections to the FOC's June 24, 2025 recommended order were taken under advisement. Under the authority cited above, our jurisdiction in this appeal is limited to the July 2, 2025 order, and, specifically, to that portion of the order denying Dean's motion to modify custody. In addition, because issues involving subject-matter jurisdiction may be raised at

---

[2] *Dean v Hunter*, unpublished order of the Court of Appeals, entered August 11, 2025 (Docket No. 376734).

[3] *Dean v Hunter*, ___ Mich ___; 24 NW3d 799 (2025).

any time, *O'Connell v Dir of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016), we have jurisdiction to address Dean's argument that the trial court lacked jurisdiction over this case.

## III. JURISDICTION

Dean first argues that the trial court lacked jurisdiction to enter its custody and parenting-time orders because, as a result of her move to Georgia with BD, that state had exclusive jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), MCL 722.1101 *et seq*. We review de novo issues of statutory interpretation. *Foster v Wolkowitz*, 486 Mich 356, 362; 785 NW2d 59 (2010). Moreover, "in the absence of any factual dispute, whether Michigan may exercise home-state jurisdiction under the UCCJEA is a question of law reviewed de novo." *Id*. (footnotes omitted).

"The UCCJEA was promulgated by the National Conference of Commissioners on Uniform State Laws in 1997 and became effective in Michigan in 2002." *White v Harrison-White*, 280 Mich App 383, 387; 760 NW2d 691 (2008). "The UCCJEA was designed to replace the Uniform Child Custody Jurisdiction Act (UCCJEA) and rectify thirty years of inconsistent case law and revise child-custody jurisdiction in light of overlapping federal enactments." *Id*. (quotation marks and citation omitted).

Under MCL 722.1202(1), a court that makes an initial child-custody determination "has exclusive, continuing jurisdiction over the child-custody determination" until either of the conditions set forth in MCL 722.1202(1)(a) and (b) is met. The first condition occurs when a Michigan court "determines that neither the child, nor the child and 1 parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." MCL 722.1202(1)(a). "[T]he significant connection that permits exercise of exclusive, continuing jurisdiction under MCL 722.1202(1)(a) exists where one parent resides in the state, maintains a meaningful relationship with the child, and, in maintaining the relationship, exercises parenting time in the state." *White*, 280 Mich App at 394. The other condition occurs when a court of any state "determines that neither the child, nor a parent of the child, nor a person acting as the child's parent presently resides in this state." MCL 722.1202(1)(b).

The paternity complaint in this case asserted that Hunter was BD's father. After Hunter failed to respond to the complaint, the trial court entered an initial custody determination granting Dean sole legal and physical custody of BD. Thus, under MCL 722.1202(1), the trial court maintained exclusive jurisdiction unless one of the two conditions, explained above, was met. Dean does not argue that either condition was met; rather, she simply asserts that Georgia became BD's home state after they relocated to Georgia, and she never consented to jurisdiction in Michigan. Neither argument is persuasive. The trial court maintained exclusive jurisdiction under MCL 722.1202(1) because no Michigan court determined that BD and Hunter did not maintain a significant connection to Michigan. See MCL 722.1202(1)(a). Similarly, no court of any state determined that neither BD nor Hunter presently resided in Michigan. MCL 722.1202(1)(b). In fact, it is undisputed that Hunter continues to reside in Michigan. Because the trial court had exclusive, continuing jurisdiction over the case under MCL 722.1202(1), the court did not err by exercising jurisdiction over this dispute.

## IV. JULY 2, 2025 ORDER

On June 20, 2025, Dean moved to modify custody on the basis that Detective Rudin submitted warrants, purportedly pertaining to Hunter's seven and nine-year-old sons, to the prosecutor's office. Dean argued that Detective Rudin's actions indicate that he found the allegations of physical and sexual abuse credible. She also asserted that Hunter engaged in conduct that prevented her "consistent communication" with BD during Hunter's parenting time. For the reasons that follow, we conclude that the trial court properly denied Dean's motion.

### A. STANDARDS OF REVIEW

" '[T]o expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024), quoting MCL 722.28. "Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). In the context of a child-custody case, "an abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Id*. (quotation marks, citation and brackets omitted). Further, "[c]lear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Id*. (quotation marks and citation omitted).

### B. DISCUSSION

The Child Custody Act (CCA), MCL 722.21 *et seq*., "governs custody, parenting time, and child support issues for minor children in Michigan, and it is the exclusive means of pursuing child custody rights." *LeFever v Matthews*, 336 Mich App 651, 662; 971 NW2d 672 (2021). "To protect children's stability, MCL 722.27 imposes a gatekeeping function on the trial court and provides standards that a moving parent must satisfy to change custody or parenting time." *Kuebler v Kuebler*, 346 Mich App 633, 668; 13 NW3d 339 (2023). Under MCL 722.27(1)(c), a party seeking to modify a custody or parenting-time order "must first establish proper cause or a change of circumstances before the court may proceed to an analysis of whether the requested modification is in the child's best interests." *Id*. (quotation marks and citation omitted). "If proper cause or a change of circumstances is shown, the trial court nevertheless 'shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.' " *Id*. at 669, quoting MCL 722.27(1)(c). The trial court must consider the twelve best-interest factors set forth in MCL 722.23 when determining a child's best interests and must "explicitly state its findings and conclusions with respect to each of these factors." *Id*. at 671 (quotation marks and citation omitted).

To the extent that Dean challenges the July 2, 2025 order,[4] we conclude that her argument lacks merit. Dean clearly believes that the trial court and FOC made erroneous findings and conclusions throughout this proceeding. The court referred the issues of custody, parenting time, and child support to the FOC, which held an evidentiary hearing on June 3, 2025. At the June 30, 2025 hearing on Dean's motion to modify custody and parenting time, the court asked Dean why she failed to appear at the June 3, 2025 evidentiary hearing. The court and Dean engaged in the following discussion:

> *THE COURT:* So why didn't you show up for the evidentiary hearing on June 3rd?
>
> *MS. DEAN:* So the evidentiary hearing, um previously all through, I've been filing motions claiming my financial restraints and my hardship. But I'm being forced to appear to all hearings in person.
>
> *THE COURT:* Because of your conduct on Zoom when you appear on Zoom.
>
> *MS. DEAN:* I don't feel that my conduct was—
>
> *THE COURT:* Well, I did, and I made a record of it. So I indicated you had to come in person. And the June 3rd hearing was held in person and you weren't here.

Before the FOC issued a recommended order regarding the issues addressed at the June 3, 2025 hearing, Dean filed her motion to modify custody and parenting time along with a motion to "set aside" orders issued as a result of the June 3, 2025 hearing. By the time of the June 30, 2025 hearing on her motions, the FOC had issued its recommended order granting Hunter custody of BD.

At the June 30, 2025 hearing, the trial court allowed Dean to present evidence, and the court contacted Detective Rudin. Thereafter, the court declined to change custody, stating that, after reviewing the evidence and the FOC's report, and contacting Detective Rudin, "there is no need to move [BD] and I'm not releasing her from [Hunter's] care[.]" Although the court did not explicitly state that Dean had failed to establish proper cause or a change of circumstances to modify custody, the court's statements indicate that it concluded as such. The court also informed Dean that she could file objections to the FOC's recommended order, and when Dean stated that she had already done so, the court asked Dean if she wanted to proceed with the de novo hearing on her objections that day rather than returning to court the following week. Dean responded affirmatively. The court directed Dean to file the transcript of the June 3, 2025 hearing and stated

---

[4] As previously stated, Dean asserts several arguments, many of which involve the proceeding generally rather than a particular order.

that it would review the matter.  Under these circumstances, we cannot conclude that the trial court erred by denying Dean's motion to modify custody.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi