Kimberly Layne WALSH–STENDER, Appellant,

v.

Charles Edward WALSH, Appellee.

No. 2009–CA–000117–MR.

Court of Appeals of Kentucky.

Dec. 30, 2009.

Kimberly L. Walsh–Stender, Gallatin, TN, pro se.

J. Ross Stinetorf, Lexington, KY, for appellee.

Before LAMBERT and VANMETER, Judges; HARRIS,[1] Senior Judge.

## OPINION

HARRIS, Senior Judge.

Kimberly Walsh–Stender appeals from a Fayette Family Court order, entered on December 16, 2008, denying her motion to alter, amend, or vacate its prior decision to modify the custodial arrangements of her minor son pursuant to Kentucky Rules of Civil Procedure (CR) 60.02. Kimberly[2] claims that the trial court erred in the following ways: (1) the evidence failed to show that a change of circumstance existed which required modification in order to comply with the best interests of the child; and (2) the factual findings of the trial court were not supported by substantial evidence. Although Kimberly's claims appear to be supported by the record, CR 60.02 relief is not the proper remedy for either claim. Nonetheless, we vacate the trial court's orders based upon the court's lack of jurisdiction.

From our review of this record, we are persuaded that the trial court lacked jurisdiction to entertain Charles' custody modification motion under the applicable provisions of the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA). KRS 403.800–403.880.[3] Therefore, we vacate all orders of the Fayette Family Court addressing Charles' custody modification order, including the order from which Kimberly has appealed.

At the time of their divorce, Kimberly and Charles were both residents of Tennessee and received a decree of dissolution from a Tennessee court. The decree included a permanent parenting plan concerning the custodial arrangements of their son, Mark. On February 4, 2004, the Tennessee court issued a new permanent parenting plan which was agreed upon by both parents. Pursuant to the plan, Charles was responsible for Mark's care and welfare except two weekends per month when Mark visited Kimberly. Each parent was given the responsibility of making day to day decisions for Mark while he was in their care. However, major decisions, such as health care, education, and religion, were to be made jointly.

Shortly after the decree was granted, Charles and Mark moved to Lexington where the majority of Charles' family lived. Charles enrolled Mark in the Lexington School and became very involved in his son's academic and social progress. Charles made many attempts to help his son adjust to his new surroundings, including working with a school counselor to further the transition and hiring tutors for

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. We refer to the parties by their given names for the sake of clarity and without intending any disrespect.

3. Although Kimberly did not question whether the Fayette Family Court had jurisdiction to hear Charles's modification motion, appellate courts are obligated to address jurisdictional issues *sua sponte* if necessary. *Kentucky High School Athletic Ass'n v. Edwards*, 256 S.W.3d 1, 4 (Ky.2008).

extra instruction. Charles also involved Mark in religious organizations, and Mark was baptized in Lexington's Christ the King Cathedral. In addition, the record indicates that Mark has a good relationship with his step-mother. The evidence clearly indicates that Charles has provided a stable, nurturing environment for Mark where he receives love and support from his father, stepmother, and several extended family members.

While living with his father, Mark has continued to visit his mother in Tennessee. Following her divorce from Charles, Kimberly has remarried and given birth to another son. During Kimberly's designated visitation, Mark usually did not spend the entire weekend with his mother. Normally, Mark's stepfather drove to Lexington to pick up Mark. When he arrived in Nashville on Friday nights, Kimberly was usually asleep. Although he spent Saturdays with Kimberly and his younger half-brother, Mark often went to work on Sundays with his stepfather before his stepfather drove him back to Lexington.

Charles, his father, mother, and wife testified that they have noticed a significant difference in Mark's behavior following these visits. They all claimed that Mark is increasingly aggressive and often acts out, a stark contrast to his standard behavior. Charles and his wife both testified that Mark was especially aggressive following one particular visitation weekend. Mark told Charles that his mother said that he would be moving to Tennessee. Allegedly, Kimberly told Mark that the custody arrangements were his choice. Mark did not want to make the decision. Charles and Margaret reassured Mark that such a change was not imminent.

On January 3, 2008, Charles filed a verified petition for custody modification seeking sole custody of Mark, with Kimberly to have limited visitation. He based the petition upon Kimberly's comments concerning Mark's living arrangements, damage done to a piece of bedroom furniture purchased for Mark, and the environment Charles provides. On June 30, 2008, the trial court held a hearing on Charles' petition. Kimberly, who is not an attorney, represented herself. Following the lengthy hearing, by an order entered on July 16, 2008, the trial court granted Charles' motion. The trial court found that Kimberly was physically and mentally unable to participate in age appropriate activities with Mark, such as bike riding. The court found deficiencies in Kimberly's parenting skills but praised Charles for the stable home environment that he provided.

Kimberly did not appeal from the July 16, 2008, custody modification order, nor did she file a CR 59.05 motion to alter, amend, or vacate within 10 days of the order's entry. Instead, Kimberly filed a CR 60.02 motion months later. The trial court heard that motion and denied it by an order entered on December 16, 2008. As noted earlier, Kimberly's appeal is from the December 16, 2008 order only. Without reaching the merits of the trial court's denial of Kimberly's CR 60.02 motion, we are compelled to vacate it and the custody modification order entered on July 16, 2008, because Fayette Family Court lacked subject matter jurisdiction.

In his verified petition for custody modification, Charles claimed that Kentucky had jurisdiction to modify the previous Tennessee custody determination under KRS 403.826 and KRS 403.822(1)(a). In March 2008, the Fayette Family Court issued an amended order regarding the home state of the child in which it declared:

1. [B]ased upon the statements made by [Kimberly] to the Court and [Kimberly's] own admission Kentucky is the home state of the minor child Mark

Christopher Walsh thereby vesting jurisdiction in this Court pursuant to K.R.S. 403.800;

2. [B]ased upon the statements made by [Kimberly] to the Court and [Kimberly's] own admissions it does not appear to the Court that there is any basis for a Tennessee court to exercise continuing jurisdiction over this matter pursuant to K.R.S. 403.822(1). [Kimberly] acknowledged that no litigation had occurred in Tennessee since the filing of the current parenting plan on February 4, 2004. Further, the child moved to Kentucky on June 28, 2004 and has resided there ever since[.]

■ The trial court's reliance on KRS 403.822 as justification for its exercise of jurisdiction was misguided. KRS 403.822 governs initial custody determinations rather than custody modifications. Under the UCCJEA, the state having original jurisdiction over a custody matter retains exclusive, continuing jurisdiction over all custody matters even when the child has acquired a new home state as long the child and at least one parent maintains substantial connections with the state. KRS 403.824; *Wallace v. Wallace*, 224 S.W.3d 587 (Ky.App.2007). Since Kimberly still lives in Tennessee and Mark regularly visits Tennessee, the substantial connection requirement was fulfilled.

Further, KRS 403.826 clearly provides: Except as otherwise provided in KRS 403.828,[4] a court of this state shall not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under KRS 403.822(1)(a) or (b) and:

(1) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under KRS 403.824 or that a court of this state would be a more convenient forum under KRS 403.834; or

(2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

The record does not contain an order or other document by which Tennessee relinquished its exclusive, continuing jurisdiction over these custody proceedings to Kentucky by declaring Kentucky a more convenient forum or finding that it no longer has jurisdiction. It is clear from the record that Kimberly continues to reside in Tennessee. Therefore, the KRS 403.826 prohibition against a Kentucky Court entertaining a custody modification motion applies here. The Fayette Family Court did not have the authority to hear Charles' motion to modify custody. This lack of jurisdiction cannot be waived. *See Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn.App.2006); *In re Custody of A.C.*, 165 Wash.2d 568, 200 P.3d 689, 693 n. 8 (2009) (noting that "to permit waiver of the jurisdictional provisions of the UCCJEA would undermine the goals of avoiding conflicting proceedings"); *Rosen v. Rosen*, 222 W.Va. 402, 664 S.E.2d 743, 749 (2008) (holding that "subject matter jurisdiction under the [UCCJEA] cannot be conferred by consent, waiver, or estoppel. The [UCCJEA] is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes"). *See also* Unif. Child Custody Jurisdiction & Enforcement Act § 201 cmt., 9 Part IA U.L.A. 673 (1999) ("since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would

---

4. KRS 403.828 concerns temporary emergency jurisdiction.

not otherwise have jurisdiction under this Act is ineffective"). We are thus compelled to vacate the Fayette Family Court orders.

Accordingly, we vacate the Fayette Family Court order, entered July 16, 2008, modifying custody, its order entered December 16, 2008, denying Kimberly Walsh–Stenders's CR 60.02 motion, and any and all collateral orders, including the award of costs and attorney's fees to Charles.

ALL CONCUR.