**Dustin BALL, Appellant**

v.

**Lucille MCGOWAN, Appellee**

**NO. 2015–CA–000302–ME**

Court of Appeals of Kentucky.

RENDERED: JULY 22, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Gordon J. Dill, Ashland, Kentucky

BRIEF FOR APPELLEE: NO BRIEF FILED.

BEFORE: KRAMER, CHIEF JUDGE; ACREE AND MAZE, JUDGES.

<u>OPINION</u>

ACREE, JUDGE:

This case involves interstate jurisdictional questions governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in KRS[1] 403.822 *et seq.* The Boyd Circuit Court, by order entered February 5, 2015, concluded

---

1.   Kentucky Revised Statute

the Nevada court that entered the original custody order had exclusive, continuing jurisdiction. On that basis, the Kentucky court declined to decide Appellant Dustin Ball's motion to modify the parties' original custody decree and dismissed the case. While we agree that the circuit court did not err in its conclusion regarding the Nevada court's jurisdiction, we do not agree that the Boyd Circuit Court's only option was dismissal. Under the carefully crafted provisions of the UCCJEA, prior to dismissing for want of jurisdiction, the Boyd Circuit Court is authorized to request that the Nevada court consider "declin[ing] to exercise its jurisdiction ... if it determines that it is an inconvenient forum under the circumstances and that [the Boyd Circuit Court] is a more appropriate forum." KRS 403.834(1); NRS [2] 125A.365.1.

█ Therefore, we affirm the Boyd Circuit Court as to its ruling that Nevada has continuing jurisdiction, but reverse the dismissal of the petition to allow the circuit court to carry out this mandate.[3]

2. Nevada Revised Statutes.

3. Pursuant to Kentucky Rules of Civil Procedure (CR) 73.08, CR 76.03, CR 76.12, and the policy of this Court, cases concerning child custody, dependency, neglect, abuse, and support, as well as domestic violence, are to be given priority, placing them on an expedited track through our Court. That did not occur in this case. Both human error and obsolete case management software resulted in an administrative delay in assigning this case to a merits panel for decision.

On June 24, 2016, after discovering the administrative error, the Clerk of the Court informed the Chief Judge and Chief Judge-elect who, together, assigned the case to a special merits panel of sitting Court of Appeals Judges who have given it the highest priority to offset any delay to the greatest extent possible. Additionally, the Court has sent a letter of explanation and apology to the parties and placed that letter in the record.

Finally, the Court has undertaken efforts to put into effect procedures to ensure that such an error is not repeated.

In March 2007, Ball and Appellee Lucille McGowan entered into a Parenting Plan and Stipulation related to the custody of their daughter, Alexus. K. Ball, born November 7, 1999. According to that plan, the parties shared joint legal custody of Alexus. Ball was named the "primary physical custodian," the Kentucky equivalent of the primary residential parent, and the parties agreed that Ball could relocate to Kentucky with Alexus. McGowan, upon providing reasonable notice, was entitled to travel to Kentucky for visitation as often as she wanted. Additionally, Ball was required to bring Alexus to Nevada for visitation at least once a year, and both parties were allowed unlimited telephone access with Alexus.[4]

The Family Division of the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, incorporated the parties' parenting agreement into its findings of fact, conclusions, of law, and decree of paternity entered on March

4. The parenting plan also included a forum/venue selection clause. It stated: "The parties choose the Second Judicial District Court of the State of Nevada as the forum and venue for all proceedings hereunder and herewith submit to the jurisdiction thereof. This is a binding choice of law, forum and venue." (R. 14). This clause is not dispositive of jurisdiction under the UCCJEA. See *Friedman v. Eighth Judicial Dist. Court of State, ex rel. County of Clark*, 127 Nev. 842, 850, 264 P.3d 1161, 1167 (2011) (an agreement by parents to confer jurisdiction on a court that might not otherwise have jurisdiction under the UCCJEA is ineffective); *Sidell v. Sidell*, 18 A.3d 499, 507 (R.I.2011) (rejecting the argument that the parties may agree in a settlement document that a state remain the child's home state for purposes of the UCCJEA and, therefore, retain exclusive, continuing jurisdiction over future custody matters); *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970) ("The parties may not confer subject-matter jurisdiction by agreement.").

14, 2007. Ball and Alexus had moved to Kentucky where Alexus has resided ever since.

What happened in the intervening years is a matter of sharp dispute. Ball, by affidavit contained in the record, claims McGowan, after staying with him and Alexus in Kentucky for a short period of time, returned to Nevada and ceased all contact with Alexus for approximately two years. Then, from 2009 until 2013, Ball claims McGowan inquired as to Alexus's welfare one time per year, but made no effort to visit Alexus or seek visitation. Ball averred Alexus has had absolutely no contact with the State of Nevada since 2007.

McGowan paints an entirely different picture. According to factual findings contained in a Nevada court order, Ball: failed to bring Alexus to Nevada at least once per year; prevented McGowan from coming to Kentucky to visit Alexus by having been physically violent with McGowan and McGowan's younger daughter, causing them bodily injury, and having threatened to kill McGowan if she ever returned to Kentucky to visit Alexus; failed to allow any telephone communication between Alexus and McGowan since 2007; and failed to confer with McGowan as to Alexus's medical care, education, religion, and extracurricular activities. (R. 52-53).

In 2013, McGowan filed a motion to modify custody in Nevada District Court. Therein, McGowan alleged Ball was unstable, unemployed, unable to pay living expenses for himself or Alexus, and had suffered head trauma that affected his mental capacity. (R. 22). McGowan requested that the district court grant her physical custody of Alexus, relocate Alexus back to Nevada, and allow Ball to exercise visitation only in Nevada. *Id.*

McGowan served the motion on Ball at his "last known address." Ball claims McGowan purposefully served it at his old address, despite having actual knowledge that Ball and Alexus had moved in 2012. Having received no notice, Ball did not file any opposition or response to McGowan's modification motion. The Nevada District Court, pursuant to a local rule of court, construed Ball's lack of opposition as an admission on his part that the motion was meritorious. It granted McGowan's motion by order entered September 16, 2013. Two months later, on November 8, 2013, the Nevada District Court entered an order finding Ball to be in contempt of court and authorizing the immediate pick up of Alexus, whether in Nevada or elsewhere.

Ball, instead of responding to the Nevada action, filed a petition for custody in Boyd Circuit Court. Ball claimed he did not receive notice, actual or constructive, of the Nevada proceeding and that the Nevada court lacked jurisdiction to modify the parties' original custody decree. A few weeks later, he filed a motion for immediate temporary order of status quo; the circuit court granted that motion, ordering that Alexus remain in the physical custody of Ball and within the Commonwealth of Kentucky until this matter could be sorted out.

McGowan entered a limited appearance in the Kentucky proceeding in an effort to dismiss Ball's Kentucky custody action for lack of jurisdiction. Following extensive briefing and several delays, the Boyd Circuit Court contacted the Nevada District Court, stating:

I have been requested, pursuant to the [UCCJEA] to inquire ... if your Court maintains continuing jurisdiction over the parties. Shortly after your Order of November 8, 2013, in Case FV06-00725, Dustin Ball through counsel filed an action here in Boyd County, Kentucky involving the same parties and subject matter. It appears that your Court may

have continuing jurisdiction. Please verify this for me so that I may act accordingly pursuant to the Uniform Act.

(R. 73).[5] The Nevada District Court responded:

> Thank you for bringing this information to my attention. It is my understanding that Ms. McGowan still resides in Nevada as I have heard nothing leading me to believe otherwise. Because a child custody determination was made in Nevada, I believe this Court has exclusive, continuing jurisdiction over this determination until the child's parents and any person acting as a parent do not have a significant connection to this state. See NRS 125A.315 (Nevada's UCCJEA).

(R. 72).

Upon receiving the Nevada court's response, the Kentucky circuit court, by order entered February 5, 2015, determined that the Nevada District Court maintained exclusive, continuing jurisdiction over the subject matter and dismissed Ball's custody action. Ball appealed.

■ Ball argues the circuit court erred in ruling that it lacked subject matter jurisdiction to consider his modification motion. He contends the circuit court misinterpreted KRS 403.826 and erred in its belief that, so long as one parent remained in Nevada, without regard to the substantial contact of the child, that the circuit court lacked jurisdiction. Ball reiterated that Alexus has had absolutely no connection with the state of Nevada since 2007, has not lived in the state of Nevada since prior to the entry of the custody decree, and that there is no evidence available in Nevada related to Alexus.

■ Whether a Kentucky court has jurisdiction under the UCCJEA is a question of law that we review *de novo*. *Addison v. Addison*, 463 S.W.3d 755, 764 (Ky.2015).

■ The UCCJEA is a uniform law designed "to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved." *In re Custody of A.C.*, 165 Wash.2d 568, 200 P.3d 689, 691 (2009) (footnote omitted). Forty nine states, including Kentucky and Nevada, have adopted the UCCJEA. *Adams–Smyrichinsky v. Smyrichinsky*, 467 S.W.3d 767, 772 (Ky.2015); *Friedman v. Eighth Judicial Dist. Court of State, ex rel. County of Clark*, 127 Nev. 842, 264 P.3d 1161, 1165 (2011); Nevada Revised Statute (NRS) Chapter 125A, *et seq*.

■ The UCCJEA is primarily concerned with child custody determinations. *Adams–Smyrichinsky*, 467 S.W.3d at 772. Broadly speaking, its purpose is "to avoid jurisdictional conflict and competition in custody matters," *Williams v. Bittel*, 299 S.W.3d 284, 288 (Ky.App.2009), and to promote uniformity. *In re Adoption of H.C.H.*, 297 Kan. 819, 304 P.3d 1271, 1277 (2013); KRS 403.876 (in applying and construing Kentucky's UCCJEA, consideration must "be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.").[6] To effect this purpose, the UCCJEA provides rules for determining jurisdiction in custody cases involving multiple states. *Campbell v. Tardio*, 261 Or.App. 78, 323 P.3d 317, 318 (2014).

---

5. The UCCJEA encourages communication among state courts concerning child custody issues. KRS 403.816.

6. Our review incorporates decisions from other UCCJEA states so as to effect the UCCJEA's call for uniformity.

"Jurisdiction to modify another state's custody order is provided by KRS 403.826." *Adams–Smyrichinsky*, 467 S.W.3d at 773. That statute directs that Kentucky shall not modify a child custody determination made by a court of another state—the decree state—unless, at the time the modification motion is filed: (A) Kentucky would otherwise have jurisdiction to make an initial custody determination under KRS 403.822, *and* (B) either:

> (1) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under KRS 403.824 or that a court of this state would be a more convenient forum under KRS 403.834; or
>
> (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

KRS 403.826; *Adams–Smyrichinsky*, 467 S.W.3d at 773.

We conclude that Kentucky would have initial child custody jurisdiction under KRS 403.822. At the time Ball filed his modification motion in 2013, Alexus had lived in Kentucky continuously since 2007 and Kentucky is Alexus's home state. KRS 403.822(1)(a) (a Kentucky court has jurisdiction to make an initial child custody determination if Kentucky "is the home state of the child on the date of the commencement of the proceeding").[7] The first part of KRS 403.826 is satisfied.

█ But that leaves the second part— KRS 403.826(1) or (2). There is no dispute in this case that McGowan still resides in Nevada. KRS 403.826(2) is not in play. Therefore, Kentucky may only modify Nevada's custody decree if *the Nevada court*

determines it no longer has exclusive, continuing jurisdiction or that Kentucky would be a more convenient forum. KRS 403.826(1).

Under the UCCJEA, the state making an initial custody determination retains "exclusive, continuing jurisdiction over the determination" and all other custody-related matters until such time as jurisdiction is lost. *Adams–Smyrichinsky*, 467 S.W.3d at 773; KRS 403.824; NRS 125A.315. In this case, no one disputes that Nevada made the initial child custody determination and it had jurisdiction to do so under NRS 125A.305, its version of the uniform act that Kentucky enacted as KRS 403.822, the initial child custody jurisdiction statute. The question is, does Nevada still retain exclusive, continuing jurisdiction over this custody matter and these parties?

The UCCJEA says that exclusive, continuing jurisdiction ceases when one of two events occurs:

> (a) [The decree state] determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with [the decree] state and that substantial evidence is no longer available in [the decree] state concerning the child's care, protection, training, and personal relationships; or
>
> (b) [The decree state] or a court of another state determines that the child, the child's parents, and any other person acting as a parent do not presently reside in [the decree state].

KRS 403.824(1)(a), (b). As previously discussed, it is clear from this record that McGowan still resides in Nevada. KRS

---

7. "[J]urisdiction under the UCCJEA 'attaches at the commencement of a proceeding.' So, a family court's jurisdiction to modify custody is determined at the time the motion to modi-fy is filed." *Wahlke v. Pierce*, 392 S.W.3d 426, 429 (Ky.App.2013) (quoting Uniform Child Custody Jurisdiction & Enforcement Act § 202 cmt. (1997)).

403.824(1)(b) is not applicable. We turn our attention to KRS 403.824(1)(a).

We begin by noting that KRS 403.824(1)(a) and Nevada's version of that section of the uniform act, NRS 125A.315(1)(a), are not the same. While Kentucky's version follows the uniform act word for word, Nevada's version deviates. It provides for exclusive, continuing jurisdiction until: "A court of this state determines that *the child, the child's parents and any person acting as a parent do not have a significant connection with this state* and that substantial evidence is no longer available in this state [Nevada] concerning the child's care, protection, training and personal relationships." NRS 125A.315(1)(a) (emphasis added). We do not think Nevada's slight departure from the model version was intended to defeat the UCCJEA's goal of uniformity in the various states' laws. Though the wording is different, its meaning must remain true to the goal of uniformity among the states.

Interpreting KRS 403.824(1)(a), this Court has found that the decree state "retains exclusive, continuing jurisdiction over all custody matters even when the child has acquired a new home state as long as *the child and at least one parent* maintains substantial connections with the decree state." *Walsh–Stender v. Walsh*, 307 S.W.3d 127, 130 (Ky.App.2009) (emphasis added). Our interpretation is buttressed by the official comment to the model UCCJEA. Section 202 of the model act is the identical counterpoint to KRS 403.824; and the relevant comment of § 202 explains the "significant connection" requirement in the following manner:

If a parent or a person acting as a parent remains in the original decree State, continuing jurisdiction is lost when neither the child, the child and a parent, nor the child and a person acting as a parent continue to have a significant connection with the original decree State and there is no longer substantial evidence concerning the child's care, protection, training and personal relations in that State. ... If the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.

UCCJEA § 202 cmt. (1997); *see also Grahm v. Superior Court*, 132 Cal.App.4th 1193, 1200, 34 Cal.Rptr.3d 270, 275 (2005) ("[W]e conclude that the original state retains continuing exclusive jurisdiction as long as the parent who is exercising visitation rights still lives in that state and the relationship between that parent and the child has not deteriorated to the point at which the exercise of jurisdiction would be unreasonable.").

Turning back to the case before us, we respectfully question the Nevada District Court's finding that it retains exclusive, continuing jurisdiction over this custody matter. In its letter to the Kentucky Circuit Court, quoted above, it appears to base its finding of exclusive, continuing jurisdiction solely on the fact that McGowan still resides in Nevada. We think this insufficient; there must be something more than one parent's connection to the decree state for exclusive, continuing jurisdiction to endure.

As discussed, Kentucky has interpreted the "significant connection" language to require that the child *and* a parent maintain significant connections to the decree state for exclusive, continuing jurisdiction to remain intact. *Biggs v. Biggs*, 301 S.W.3d 32, 34 (Ky.App.2009). This does not mean, however, that the child must reside in the decree state for it to retain jurisdiction. *Id.* Instead, "a significant connection

exists if 'one parent resides in the [decree] state and exercises at least some parenting time in the [decree] state.'" *Id.* at 33 (quoting *White v. Harrison–White,* 280 Mich.App. 383, 760 N.W.2d 691, 697 (2008)).

Similarly, while we were unable to locate a Nevada case interpreting its statutory equivalent, NRS 125A.315(1)(a), the language of the Nevada statute requires a significant connection by "the child, the child's parents, *and* any person acting a parent[.]" *Id.* (emphasis added). By using the connector "and" between each listed item in NRS 125A.315(1)(a), it appears, at least to this Court, that *the child and* at least one parent must have a significant connection to Nevada for that state to exercise exclusive, continuing jurisdiction.

This interpretation dovetails with the official comment to § 202 of the model act, quote above, which, as noted, requires that when the child no longer resides in the decree state, the remaining parent *and* the child must retain a connection to the decree state to preserve exclusive, continuing jurisdiction. UCCJEA § 202 cmt. While McGowan continues to reside in Nevada, there is no evidence she exercised any parenting time in Nevada or maintained any sort of relationship with Alexus. The relationship between McGowan and Alexus has become "so attenuated" that it is highly doubtful to us that the significant-connections requirement has been satisfied. *Id.*

This record does not reflect that the Nevada court considered whether Alexus, despite not living in Nevada, maintained any sort of connection to Nevada or her mother. While McGowan continues to reside in Nevada, there is no evidence she exercised any parenting time in Nevada. In fact, it appears Alexus and McGowan have not had any sort of relationship, at all, in many years. Their relationship can hardly be described as anything but attenuated and diminished. Even taking McGowan's allegations as true—that Ball prevented her from exercising any visitation rights with Alexus either in Kentucky or Nevada since 2007—McGowan waited six years to file a custody modification motion, thus contributing to her attenuated relationship with her child. This significant delay is concerning and calls into question McGowan's allegations against Ball.

But despite our misgivings, it is not for this Court, or any Kentucky court, to make this jurisdictional decision. The UCCJEA "makes it clear that the original decree State is the *sole determinant* of whether jurisdiction continues" under the act. UCCJEA § 202 cmt. (emphasis added). "The modification State is not authorized to determine that the original decree State has lost its jurisdiction." UCCJEA § 203 cmt.; *see also* KRS 403.826 ("[T]he court of the *[decree] state* determines that it no longer has exclusive, continuing jurisdiction"(emphasis added)); KRS 403.824(1)(a) ("A court of *[the decree] state* determines that neither the child, nor the child and one (1) parent ... have a significant connection with [the decree] state[.]").

Application of the UCCJEA is methodical and precise. Both the Kentucky court and the Nevada court complied with the UCCJEA, to a point. The Nevada court concluded it retained exclusive, continuing jurisdiction. This Court is without authority to disturb or otherwise interfere with that finding. UCCJEA § 203 cmt.; *Id.* § 202 cmt.; KRS 403.826(1); KRS 403.824(1)(a). There is no provision in the uniform act for a potential modifying state court to challenge the ruling of the decree state court.

However, the Boyd circuit court did not avail itself of the next option under the UCCJEA—requesting that the Nevada

court consider declining exercise of its jurisdiction because it is an inconvenient forum. KRS 403.834(1).

It is proper that a Kentucky court ask the decree state to relinquish jurisdiction in favor of Kentucky on grounds that Kentucky would be a more convenient forum. *See* KRS 403.834(1) ("The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or *request of another court*"; emphasis added). Given the facts of this case, we conclude that such a step is more than proper. And it is certainly permissible for the Nevada court to decline to exercise its jurisdiction. Nevada's applicable statute states:

> A court of this state which has jurisdiction pursuant to the provisions of this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. . . .

NRS 125A.365(1).

Considering the length of time Alexus has resided in Kentucky, the fact that all her school, medical, and other records are available in Kentucky, and Alexus's limited relationship with McGowan, it is possible that the Nevada court will agree with this Court that Kentucky is the more convenient forum to handle this custody dispute.[8]

We affirm the Boyd Circuit Court's February 5, 2015 order finding that the Neva-

da court retains and has continuing jurisdiction over this custody matter, but we reverse the dismissal to allow the Boyd Circuit Court to carry out the mandate expressed herein. If the Nevada court declines to exercise its jurisdiction, Ball's petition and motion for modification should proceed in the Boyd Circuit Court, giving full faith and credit to the orders entered by the Nevada court while it exercised jurisdiction; if the Nevada court retains jurisdiction, the Boyd Circuit Court shall dismiss the action.

ALL CONCUR.

---

8. The Nevada action proceeded notwithstanding this appeal. Ball's counsel entered an appearance in that case in June 2015. On June 13, 2016, the court conducted a "Review Hearing." Ball and Alexus (*in camera*) testified telephonically from their home in Kentucky. At the conclusion of the hearing, the court ordered that "the parties participate in reunification counseling [and further ordered that a]n agreed upon counselor shall be found

in Kentucky and the length and scope of the counseling shall then be determined by the counselor. ... The Court orders no physical visitation [between McGowan and Alexus] until the counselor becomes involved and sets forth therapeutic recommendations." (*McGowan v. Ball*, FV06-00725 (2nd Jud. Dist., Washoe Co. June 13, 2016) (Transaction # 5558927)).